UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABDULLAH AL-KIDD,<br>    Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES, Attorney General of<br>the United States; *et al.*,<br><br>    Defendants. | Case No. 1:05-093-EJL<br><br>ORDER |

Pending before the Court in the above-entitled action is Defendant James Dunning's motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff Abdullah al-Kidd has filed his opposition to that motion and Mr. Dunning has responded, so the motion is ripe for review. Having fully reviewed the record herein, the Court finds that the legal arguments are adequately presented in the brief and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. D. Idaho R. 7.1(d)(2).

**FACTUAL BACKGROUND**

On March 16, 2003, Mr. al-Kidd was arrested at the Dulles International Airport in Virginia pursuant to a material witness warrant issued in Idaho. Am. Comp. § 45–65. Mr. al-Kidd was taken to the Alexandria Detention Center in Virginia where he was held for eight days prior to being

transferred to Idaho. Id. § 77. Mr. al-Kidd alleges statutory and constitutional violations against a variety of state and federal defendants, including Mr. Dunning who is a sheriff for the city of Alexandria, Virginia and the subject of this motion. Id. § 28. Mr. Dunning is being sued in his individual capacity for alleged violations of the constitution and federal statutes. Id. All of Mr. al-Kidd's claims against Mr. Dunning are based on the restrictive conditions of his detention while in the Alexandria Detention Center over which Mr. Dunning had ultimate responsibility and oversight. Id.

Mr. al-Kidd's complaints regarding his detention in Virginia generally argue that he was treated as a criminal defendant rather than as a material witness whose detention should have been with the least restrictive means necessary. Id. § 82. Specifically Mr. al-Kidd claims that he was initially placed in a small cell with another inmate who was not a witness, but a criminal defendant. Id. § 72. Then, Mr. al-Kidd claims he was strip searched and transferred to a high-security unit of the jail. Id. § 73. Additionally, Mr. al-Kidd was allegedly only allowed out of his cell for one to two hours per day and the guards would not allow Mr. al-Kidd's brother-in-law to visit him. Id. § 74, 76.

## DISCUSSION

Mr. Dunning asserts that four different grounds exist that warrant dismissal: (1) lack of personal jurisdiction, (2) failure to state a claim in relation to the alleged constitutional violations, (3) failure to state a claim in relation to the alleged violations of the Material Witness and Bail Reform Act, and (4) qualified immunity. Because the Court finds that it lacks personal jurisdiction over Mr. Dunning, it will not address the other claims.

### A. Personal Jurisdiction

Mr. Dunning claims that this Court does not have personal jurisdiction over him because he

is a Virginia resident and has not had any contacts with Idaho that would give rise to personal jurisdiction. Mr. al-Kidd claims that Mr. Dunning has the necessary minimum contacts with Idaho because he personally executed an agreement to hold federal prisoners from throughout the country and should have known that Mr. al-Kidd was being held pursuant to an Idaho arrest warrant and was being transferred to Idaho.

Personal jurisdiction over both parties is required before a court may decide a case in controversy. U.S. CONST. amend. XIV. Where a defendant makes a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to demonstrate that jurisdiction is appropriate. Schwarzenegger v. Fred Martin Motor, Co., 374 F.3d 797, 800 (9th Cir. 2004). On a 12(b)(2) motion, the Court may consider affidavits and other documents not mentioned in the complaint to make the personal jurisdiction determination. National Union Fire Ins. Co. v. Aerohawk Aviation, Inc., 259 F.Supp. 2d 1096, 1101 (D. Idaho 2003). Where a motion is based only on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts." Schwarzenegger, 374 F.3d at 800. During review, uncontroverted allegations in the complaint must be taken as true and conflicts between the parties must be resolved in favor of the plaintiff. Id.

Because there is no applicable federal statute governing personal jurisdiction, this Court applies the law of the state in which it sits, in this case Idaho. Id. To properly exercise personal jurisdiction over Mr. Dunning pursuant to Idaho's long-arm statute, Mr. Dunning must meet the requirements of the long-arm statute and the exercise of personal jurisdiction must comply with due process. See State of Idaho v. M.A. Hanna Co., 819 F. Supp. 1464 (D. Idaho 1993). However, the Ninth Circuit has recognized that when the Idaho Legislature adopted the long-arm statute it intended to exercise all of the jurisdiction available under the Due Process Clause of the United States Constitution. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987); see also Houghland Farms,

Inc. v. Johnson, 803 F.2d 978, 981 (Idaho 1990). Thus, the state and federal limits are co-extensive and an independent review of whether jurisdiction exists under the long-arm clause is unnecessary. See Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977).

There are two forms of personal jurisdiction: general and specific. Lake, 817 F.2d at 1420. If the defendant has "continuous and systematic" or "substantial" activities within the forum state, that state has general jurisdiction over the defendant. Id. Specific jurisdiction over the defendant is based on the quality and nature of the defendant's contacts with the forum state. Id. at 1421. Neither party alleges that this Court has general jurisdiction over Mr. Dunning, so the Court will determine whether it has specific personal jurisdiction over him.

To show that the defendant has sufficient contacts with the forum state to meet the specific personal jurisdiction requirements, the plaintiff must show that (1) the defendant purposefully availed himself of the privileges of the forum state, which invoked the benefits and protections of its laws; (2) the claims arose out of the defendant's forum-state related activities; and (3) the exercise of jurisdiction would be reasonable. Ziegler v. Indian River Co., 64 F.3d 470, 473 (9th Cir. 1995).

The purpose behind the first requirement, the purposeful availment requirement, is to ensure that a court does not have specific personal jurisdiction over the defendant unless that defendant would reasonably anticipate being haled into court there. Lake, 817 F.2d at 1421. To determine whether the defendant did purposefully avail himself of the forum state, the Ninth Circuit applies the Calder effects test.[1] Id.; see Calder v. Jones, 465 U.S. 783, 789–90 (1984). Calder set forth three

---

[1] Mr. Dunning claims that the use of the Calder test is incorrect because that test only applies in defamation or similar cases. But the Calder test is the appropriate test for tort claims and a claim for the deprivation of a constitutional right is similar to a tort claim. Ziegler, 64 F.3d at 473. Therefore, the three-part Calder test applies to deprivation of constitutional rights claims. Id. at 473–74.

elements of purposeful availment: "(1) intentional action, (2) aimed at the forum state, (3) and causing harm that the defendant should have anticipated would be suffered in the forum state." Ziegler, 64 F.3d at 474. These elements ensure that the defendant would reasonably anticipate being haled into court in the forum state.

For the first element of the Calder test, Mr. al-Kidd must show that Mr. Dunning's actions were intentional. Mr. al-Kidd's complaint states that Mr. Dunning's actions were intentional. Am. Compl. § 80. The Court must take all of the allegations in the complaint as true for the purpose of establishing jurisdiction, so the first element is met.

Second, Mr. al-Kidd must show that Mr. Dunning's actions were expressly aimed at Idaho. This requirement can be met when the alleged wrongful conduct is targeted at a plaintiff that the defendant knows is resident of the forum state. Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). But the defendant's acts must target the plaintiff in the forum state and "be performed for the very purpose of having their consequences felt in the forum state." Id. at 1111–12.

Finally, Mr. al-Kidd must show that Mr. Dunning's actions caused harm in Idaho. For this element, at least a significant amount of the harm must have occurred in the forum state. Id. at 1113; see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006). The correct forum is the forum in which the defendant's actions were felt, not where the actions themselves occurred. Id. at 1206.

To meet the purposeful availment requirement, Mr. al-Kidd claims that Mr. Dunning purposefully directed his conduct towards Idaho by signing the Intergovernmental Services Agreement (IGA) and holding Mr. al-Kidd pursuant to an Idaho arrest warrant. In the IGA, Mr. Dunning agreed to hold federal prisoners from other districts, including material witnesses, at the Virginia Detention Center. Mr. al-Kidd claims that by signing the IGA, Mr. Dunning knew or

should have known that federal material witnesses from Idaho and elsewhere would be detained there. As such, Mr. al-Kidd claims the IGA and the detention of Mr. al-Kidd pursuant to an Idaho warrant are sufficient contacts with Idaho because Mr. Dunning engaged in the alleged wrongful conduct knowing that Mr. al-Kidd was a resident of Idaho. This Court finds those contacts are not sufficient to meet the specific personal jurisdiction requirements.

Mr. Dunning did not purposefully avail himself of the benefits and privileges of Idaho. Mr. Dunning's only interactions with Mr. al-Kidd occurred in Virginia. Mr. Dunning did not aim his actions towards Idaho by simply signing an IGA to hold prisoners from other states. The IGA simply states that his facility would hold detainees in Virginia until they can be transferred. Such an agreement does not involve reaching into other states. Also, even though Mr. al-Kidd was held in Virginia pursuant to an arrest warrant from Idaho and Mr. Dunning might have known that Mr. al-Kidd would be transferred to Idaho, these facts are insufficient to meet the requirements of personal jurisdiction. Again Mr. Dunning's actions were not aimed towards Idaho; they were aimed towards holding Mr. al-Kidd in Virginia. Mr. Dunning simply held Mr. al-Kidd pursuant to an Idaho arrest warrant because he had agreed to do so when he signed the IGA. Also, Mr. Dunning was not involved in the transfer to Idaho.

Additionally, all of Mr. al-Kidd's claims against Mr. Dunning relate to harm that allegedly occurred in Virginia, not Idaho. Mr. Dunning's actions were felt in Virginia and did not reach Idaho nor were they directed at Idaho. Even if Mr. al-Kidd is an Idaho resident, that residency alone is not sufficient to meet the purposeful availment requirements because the alleged harmful actions must have targeted Idaho and the harm must have been felt in Idaho. The complaint here does not allege such facts. Taking the allegations of the complaint as true, Mr. Dunning's contacts with Idaho, if any, were not sufficient to purposefully avail himself of Idaho's privileges; therefore this Court is

without personal jurisdiction over Mr. Dunning.

Even if Mr. Dunning had purposefully availed himself of Idaho's privileges, this Court's exercise of personal jurisdiction over him would be unreasonable. In determining whether the exercise of personal jurisdiction is reasonable, the Court looks at seven factors: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendant's state; extent of purposeful interjection; and the forum state's interest in the suit. Brand v. Menlove Dodge, 796 F.2d 1070, 1075 (9th Cir. 1986).

First, Mr. al-Kidd could have brought these claims against Mr. Dunning in an alternative forum, Virginia. As for the burden on the defendant, it should be examined in light of the corresponding burden on the plaintiff. Id. Mr. al-Kidd might be burdened by having to bring cases in both Idaho and other locations where his alleged injuries occurred, but Mr. Dunning would also be substantially burdened if he had to defend himself against various claims throughout the country simply because he signed an IGA. As for an efficient judicial resolution, the site where the events took place or where most of the evidence is located is usually the most efficient forum. Id. All of the claims against Mr. Dunning are based on Mr. al-Kidd's detention in Virginia. Proving or disproving these allegations would be much easier in the state where they allegedly occurred given that any potential witnesses or evidence is likely located there.

Additionally, the extent of purposeful interjection factor also weighs in favor of Mr. Dunning. As explained above, Mr. Dunning's contacts with Idaho, if any, were very limited, so purposeful interjection into Idaho is virtually nonexistent. For the conflict with the sovereignty of the defendant's state, that factor is not significant in cases involving United States citizens. Id. at 1076 n.5. Finally, Idaho's interest in this case is very limited. Idaho might have some interest in

how its citizens are held pursuant to Idaho arrest warrants, but Virginia has a greater interest in regulating the conduct of its state officials and protecting detainees' rights within its own state. Based on a balancing of these factors, it would be unreasonable for this Court to exercise personal jurisdiction over Mr. Dunning.

### B.  Transfer Request

Mr. al-Kidd requests that if this Court finds that it does not have personal jurisdiction over Mr. Dunning that it transfer the action to Virginia rather than dismiss it because the statute of limitations has run and any claim in Virginia would be time-barred.  Where a court lacks personal jurisdiction over a defendant, it may transfer the case to another district where the action could have been brought originally.  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).

Here, the Court concludes that Idaho is a proper venue for this action, and therefore any transfer of venue must be made pursuant to § 1404(a).[2]  Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1211 (D.Hawaii 2002) (noting that § 1404(a) generally applies when the transferor court is a proper venue for the action, while § 1406(a) is generally relied on when venue is not proper in the forum where a plaintiff originally filed suit).  In determining whether to transfer under § 1404(a), the court should consider: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice.  28 U.S.C. § 1404(a).  The Court should also consider private and public interest factors derived from the doctrine of *forum non conveniens*.[3]  Lung v.

---

[2] Venue exists in a judicial district (1) where any defendant resides, if all defendants reside in the same State, (2) in which a substantial part of the events or omissions giving rise to the claim occurred..., or (3) in which any defendant may be found if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391.  The events critical to the claims brought in this case occurred in Idaho including the application for the material witness warrant and detention hearing.  While much of the treatment imposed upon Mr. al-Kidd occurred outside of Idaho, his claims stem from the impropriety of the issuance of the material witness warrant.  Therefore Idaho is a proper venue for his claims.

[3] The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing

Yachts Intern., Ltd., 980 F.Supp. 1362, 1370 (D.Hawaii 1997) (citations omitted). "Ultimately, the court 'must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum.'" Id.

The Court has discretion over whether it would be in the interest of justice to transfer the case. Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523 (9th Cir. 1983); Taylor v. Soc. Sec. Admin., 843 F.2d 232, 233 (9th Cir. 1988). A district court is within its discretion when it finds that the interest of justice would be served by transferring an action that would otherwise be barred by the statute of limitations. McKeel v. Islamic Republic of Iran, 722 F.2d 582 (9th Cir. 1983) (granting a transfer of venue pursuant to 28 U.S.C. § 1631). In cases involving multiple defendants where jurisdiction is improper for only certain defendants, the Court can sever the case as to those defendants and either dismiss or transfer the matter while retaining the claims and parties over which jurisdiction and venue is proper. Anrig v. Ringsby United, 603 F.2d 1319, 1324 (9th Cir. 1979) (finding that the presence of some defendants in a diversity action destroyed diversity, but because they were non-indispensable parties the district court should have severed the parties and either dismissed or transferred the parties pursuant to Rule 21).

Here, the Court finds the requested transfer is appropriate. As stated above, all of the claims against Mr. Dunning are based on Mr. al-Kidd's conditions of detention in Virginia making it the appropriate and more convenient forum in which to adjudicate the claims given that the witnesses and evidence are likely located in Virginia. Further, the claims against Mr. Dunning can be

---

witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive. The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law.

adjudicated separately from Mr. al-Kidd's claims against the other Defendants as the claims arise from distinct factual and legal basis.  Moreover, the interests of justice favor transferring the matter as the Court cannot say at this time that the claims lack merit and were they dismissed here, Mr. al-Kidd would be precluded from raising them in Virginia as the statute of limitations has expired.  Accordingly, the Court will transfer these claims to Virginia so they can be adjudicated on their merits.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** Plaintiff's request for transfer of venue is **GRANTED**.  The claims against Defendant Dunning are **SEVERED** and **TRANSFERRED** to the United States District Court for the Eastern District of Virginia, Alexandria Division.  The Clerk of the Court is directed to forward the requisite notices and materials to said district.

IT IS FURTHER ORDERED that Defendant Dunning's Motion to Dismiss (Docket No. 51) is **DENIED AS MOOT**.

DATED: **July 19, 2006**

Honorable Edward J. Lodge
U. S. District Judge