UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABDULLAH AL-KIDD, ) | Case No. CV:05-093-S-EJL |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM ORDER |
| ) | |
| ALBERTO GONZALES, Attorney General ) | |
| of the United States; *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court in the above-entitled action is Defendants motion to dismiss, or motion for summary judgment, under Federal Rules of Civil Procedure 12(b)(6) and 56. Plaintiff Abdullah al-Kidd has filed his opposition to that motion and the government has responded. The motion is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the legal arguments are adequately presented in the brief and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. D. Idaho R. 7.1(d)(2).

**Factual and Procedural Background**

As part of an anti-terrorism investigation in Idaho following September 11, 2001, the Federal Bureau of Investigation (FBI) conducted surveillance of Mr. al-Kidd and his then-wife. (Dkt. No. 40, ¶ 43–44). Mr. al-Kidd is a citizen of the United States who converted to Islam while he was a student at the University of Idaho. (Dkt. No. 40, ¶ 39–40). His wife, child, parents, and siblings all

live in the United States. (Dkt. No. 40, ¶ 54). As part of the investigation, Mr. al-Kidd met with FBI officers on a number of occasions. (Dkt. No. 40, ¶ 54(c)).

The FBI also investigated Sami Omar Al-Hussayen, a graduate student at the University of Idaho, and charged him with visa fraud and making false statements. (Dkt. No. 40, ¶ 45). Mr. al-Kidd was affiliated with Mr. Al-Hussayen through their work with a charitable Islamic organization. (Dkt. No. 40, ¶ 60). On March 14, 2003, the government sought a warrant for Mr. al-Kidd's arrest as a material witness in the case against Mr. Al-Hussayen. (Dkt. No. 40, ¶¶ 46–47). The government did not serve Mr. al-Kidd with a subpoena prior to seeking the arrest warrant. (Dkt. No. 40, ¶ 54(f)).

At the time of the arrest warrant application, Mr. al-Kidd was planning to travel to Saudi Arabia to further his studies. (Dkt. No. 40, ¶ 15). The application was based on a 3-page affidavit executed by FBI Agent Scott Mace. (Dkt. No. 40, ¶ 48). The affidavit was based on information acquired by FBI Agent Michael Gneckow and other law enforcement agents. (Dkt. No. 40). To explain why the material witness arrest warrant was necessary, the affidavit included information regarding Mr. al-Kidd's relationship with Mr. Al-Hussayen and his plans to leave the United States for Saudi Arabia and states, in relevant part:

> Kidd is scheduled to take a one-way, first class flight (costing approximately $5,000.00) to Saudi Arabia on Sunday, March 16, 2003, at approximately 6:00 EST. He is scheduled to fly from Dulles International Airport to JFK International Airport in New York and then to Saudi Arabia.

(Dkt. No. 40, ¶ 49). Based on this affidavit, United States Magistrate Judge Williams approved the application and issued a material witness arrest warrant for Mr. al-Kidd. (Dkt. No. 40, ¶ 46).

Pursuant to the arrest warrant, Mr. al-Kidd was arrested in Virginia on March 16, 2003, and brought in front of United States Magistrate Judge for the Eastern District of Virginia, Liam O'Grady the next morning. (Dkt. No. 40, ¶ 65). At that appearance, the government requested a continuance of the detention hearing so Mr. al-Kidd could be transferred to Idaho. (Dkt. No. 40, ¶ 77). Judge O'Grady advised Mr. al-Kidd that a transfer prior to the detention hearing might be preferable because people in Idaho would be more familiar with the case. (Dkt. No. 40). Mr. al-Kidd agreed to the transfer after assurances that it would occur quickly. (Dkt. No. 40).

Mr. al-Kidd remained in custody in Virginia for seven days until he was transferred to Oklahoma on March 24, 2003. (Dkt. No. 40, ¶ 83). The next day, Mr. al-Kidd was transferred to Boise, Idaho. (Dkt. No. 40, ¶ 92). That same day Mr. al-Kidd briefly met with a Federal Public Defender before appearing in front of United States Magistrate Judge Williams. (Dkt. No. 40, ¶ 93). At that appearance, the government moved for a three-day continuance before the detention hearing and defense counsel agreed, stating that he needed more time to review the case with Mr. al-Kidd. (Dkt. No. 40, ¶ 94). Judge Williams continued the hearing until March 27, 2003, but for reasons not explained by either party, the hearing did not occur until March 31, 2003. (Dkt. No. 40, ¶¶ 94, 103). At that hearing, Mr. al-Kidd was released into the custody of his wife in Nevada. (Dkt. No. 40, ¶ 103). The conditions of his release included the confiscation of his passport, his travel was limited to four states, he had to report to a probation officer in Idaho and Nevada, and he was subjected to home visits. (Dkt. No. 40, ¶ 103). Ultimately, the government never called Mr. al-Kidd to testify and his release conditions were removed on June 16, 2004. (Dkt. No. 40, ¶ 107; United States v. Al-Hussayen, 3:03-cr-00048-EJL-ALL, Docket No. 680).

As a result of the actions by the government and its agents, Mr. al-Kidd filed a complaint alleging various constitutional and statutory violations against a variety of state and federal defendants. (Dkt. No. 40, ¶¶ 150–77). This motion to dismiss, or in the alternative for summary judgement, by the United States is made as to Mr. al-Kidd's Federal Tort Claims Act (FTCA) claims. Because both parties treat this as only a motion to dismiss, the Court will deem this a motion to dismiss and address the arguments accordingly.

## Standard of Review

A motion to dismiss should not be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. See Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992). However, a court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." Clegg, 18 F.3d at 754. There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)). Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).

**Discussion**

Mr. al-Kidd puts forth three claims against the government under the FTCA. First, a false imprisonment claim based on his initial arrest. Second, a false imprisonment claim based on the period of time between his initial appearance in front of a United State Magistrate in Virginia and his detention hearing in this District. Mr. al-Kidd's third claim is for abuse of process.[1]

Under the FTCA, liability is determined by the tort law of the state where the claim arose. Gasho v. United States, 39 F.3d 1420, 1427 (9th Cir. 1994). Because Mr. al-Kidd's claims are based on the procurement of an arrest warrant in Idaho and the claims arose in Idaho, Idaho law applies.

I.      False Imprisonment Claim in Relation to the Initial Arrest:

Mr. al-Kidd claims his arrest in Virginia was pursuant to an invalid warrant and, therefore, the government is liable for false imprisonment. Mr. al-Kidd argues the arrest warrant was invalid because the supporting affidavit contained misrepresentations and, with or without misrepresentations, it was not supported by probable cause. The government argues that Mr. al-Kidd was not falsely imprisoned because he was arrested pursuant to legal process and the arrest warrant was supported by probable cause.

In general, to be liable for false imprisonment in Idaho, a person must unlawfully restrain the physical liberty of another without adequate legal justification or without probable cause. Clark v. Alloway, 170 P.2d 425, 428 (Idaho 1946).

---

[1] Under the FTCA, all of the claims are brought against the United States based on the actions or omissions of its employees. Mr. al-Kidd's false imprisonment claim for his initial arrest is based on the actions of FBI agents Mace and Gneckow. The false imprisonment claim for the delay in transport is based on the actions of the government employees that allegedly delayed his transfer. Finally, Mr. al-Kidd's abuse of process claim is again based on the actions of Agent Mace and Agent Gneckow, but also includes the actions of Alberto Gonzales, the Attorney General of the United States.

A.  The Procurement of the Arrest Warrant:

Under Idaho law, an officer cannot be sued for false imprisonment when the process is fair on its face. Hansen v. Lowe, 100 P.2d 51, 55 (Idaho 1940). So if an officer executes an arrest warrant that is valid on its face, the executing officer cannot be held liable for false imprisonment even though the warrant was procured through fraud or perjury. Id. at 56. But this protection of the officer is limited to when the officer is not involved in the procurement of the warrant and is simply executing a seemingly valid warrant. See Id. In this case, Mr. al-Kidd does not argue that the government should be liable based on the actions of the officers that executed the warrant; Mr. al-Kidd argues that the government is liable because of the conduct of the officers who procured the warrant using misstatements. The Idaho false imprisonment case law does not directly address this type of false imprisonment claim.

It is the duty of this Court to apply Idaho law as it believes the Idaho Supreme Court would apply it, so in the absence of controlling precedent it must predict how the Idaho Supreme would decide the issue. Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003). To do so, this Court should use intermediate appellate decisions, statutes, and decisions from other jurisdictions. Id.

Various jurisdictions have permitted false imprisonment claims based on misstatements and omissions during the procurement of arrest warrants. See e.g. Earl v. Winne, 101 A.2d 535, 542 (N.J. 1954) (holding that the affiant is responsible for the arrest and prosecution of that person and the affiant should be liable for any false imprisonment that results from his misstatements); Bender v. City of Seattle, 664 P.2d 492, 499–500 (Wash. 1983) (deciding that an officer can be held liable for false arrest and imprisonment if the officer makes misstatements or withholds facts in order to

procure an arrest warrant because an officer is not permitted to "cleanse" the transaction by only providing facts that would lead to the issuance of an arrest warrant); <u>Ross v. Village of Wappinger Falls</u>, 406 N.Y.S.2d 506, 506 (N.Y. App. Div. 1978) (holding that officers are shielded from liability if they act in good faith and are unaware that a warrant might be invalid, but they are liable if they are involved in wrongdoing during the procurement of that warrant).

Based on current Idaho false imprisonment law and the law of other jurisdictions, this Court concludes that the Idaho Supreme Court would permit Mr. al-Kidd's false imprisonment claim. Idaho law only shields officers from liability if they are unaware of any defect in the warrant, so there is no indication that officers would be shielded if they were the cause of the defect as alleged in this case. <u>Hansen</u>, 100 P.2d at 55. The complaint here claims the process was not valid because the officers made misstatements and omitted information to obtain that arrest warrant. These allegations are sufficient to state a claim for false imprisonment under the FTCA. The government's argument that the claim should be dismissed because the arrest was pursuant to a valid legal process, namely that the officers procured an arrest warrant from a neutral magistrate prior to the arrest, raises factual issues not properly considered on a motion to dismiss.

      B.     <u>Lack of Probable Cause for Arrest Warrant Claim</u>:

Additionally, the United States moves to dismiss Mr. al-Kidd's false imprisonment claim by asserting that the arrest warrant, either with or without the alleged misrepresentations and omissions, was supported by probable cause. Mr. al-Kidd claims that the affidavit supporting the arrest warrant lacked probable cause. (Dkt. No. 40, ¶ 50).

Pursuant to the material witness statute, a judicial officer may issue an arrest warrant for a material witness if it is shown that it would be impracticable to secure the testimony of that person

through a subpoena. 18 U.S.C.A. § 3144. Similar to other arrest warrants, a material witness arrest warrant must be supported by probable cause. Bacon v. United States, 449 F.2d 933, 942–43 (9th Cir. 1971). Therefore, in order to secure a material witness arrest warrant, the judicial officer must have probable cause to believe that (1) the testimony of the person is material, and (2) "that it may be impracticable to secure his presence by subpoena." Id. at 943.

Under Idaho law, if an arrest warrant is supported by probable cause an officer cannot be held liable for false imprisonment or false arrest. Sprague v. City of Burley, 710 P.2d 566, 574 (Idaho 1985). So regardless of any alleged misrepresentations or omissions on the arrest warrant, if the arrest warrant was supported by probable cause, he does not have a claim for false imprisonment.

As this is a motion to dismiss, the complaint only needs to allege facts which, if true, are sufficient to establish that probable cause was lacking. The complaint states that probable cause was lacking and goes on to list various factual allegations to support this claim including the fact that the affidavit supporting the arrest warrant application contained misstatements and omitted material information. One of the alleged misstatements was that the affidavit stated that Mr. al-Kidd was flying to Saudi Arabia on a one-way, first-class ticket, when in fact his ticket was a round-trip, coach-class ticket. (Dkt. No. 40, ¶ 53). The complaint also alleges various facts omitted from the affidavit would have shown that Mr. al-Kidd's testimony could have been secured through a subpoena. These alleged omissions included: (1) Mr. al-Kidd was a native-born United States citizen; (2) Mr. al-Kidd had talked with the FBI on several occasions prior to his arrest and had never failed to show up for these meetings; (3) Mr. al-Kidd had various family members, including a wife and children that were living in the United States; (4) prior to his arrest, Mr. al-Kidd had not

heard from the FBI for approximately six months; and (5) the FBI did not inform Mr. al-Kidd that he could not travel abroad. (Dkt. No. 40, ¶ 54).

The Court finds the allegations within the complaint are sufficient to support Mr. al-Kidd's false imprisonment claim. Whether or not the warrant application lacked probable cause is a question for a later day.

II.   <u>False Imprisonment Claim in Relation to the Detention Hearing Delay</u>:

Mr. al- Kidd raises a second false imprisonment claim, separate from the one related to his initial arrest, asserting that the amount of time between his first appearance in front of the Magistrate Judge in Virginia and his detention hearing in Boise constituted false imprisonment because he was not promptly brought before the court in this District for his detention hearing. The government argues that any delay in the detention hearing was agreed to by Mr. al-Kidd and was reasonable based on the time it took to transfer Mr. al-Kidd from Virginia to Idaho. The government also argues that this type of claim is not actionable under the FTCA.

According to Idaho law, an arresting officer can be liable for false imprisonment if that officer fails to bring a prisoner before a court as required by law. <u>Madsen v. Hutchison</u>, 290 P. 208, 208 (Idaho 1930). To avoid liability, the arresting officer must bring the defendant in front of the court within a reasonable time after arrest based on the availability of the magistrate and other factors that are within the control of the arresting officer. <u>Id.</u> The Idaho Supreme Court has further clarified that all of the circumstances surrounding a delay should be examined to determine if the delay is reasonable. <u>Anderson v. Foster</u>, 252 P.2d 199, 203 (Idaho 1953). The court held that a claim for false imprisonment turns on whether the delay was reasonable, so an arresting officer can only be liable for false imprisonment if a delay was unreasonable. <u>Id.</u>

This requirement for the reasonableness of a delay is similar to the good cause requirement for a continuance of a detention hearing.  After a material witness is arrested pursuant to 18 U.S.C. § 3144, the material witness is to be treated in accordance with 18 U.S.C. § 3142, which lays out the requirements for the release or detention of a defendant pending trial.  One of the requirements is that the material witness receive a detention hearing to determine whether detention is necessary to ensure that the witness will not flee.  18 U.S.C. § 3142(f)(2).  This hearing should be held upon the witness's first appearance in front of a judicial officer, but either the witness or the government can seek a continuance.  Id.  Because the witness remains detained during the continuance, it should not exceed five days if the witness made the motion or three days if the government made the motion. Id.  These time limits are subject to an exception; they can be extended for "good cause."  Id.  The United State Supreme Court has recognized the importance of prompt detention hearing and stated that the time limitations must be followed with care and precision.  United States v. Montalvo-Murillo, 495 U.S. 711, 716 (1990).  When interpreting the good cause exception to these strict time limitations, the Ninth Circuit held that good cause does not include scheduling problems of counsel or the court.  United States v. Al-Azzawy, 768 F.2d 1141, 1146 (9th Cir. 1985).

Mr. al-Kidd claims that the government's detention of him during his transfer to Idaho exceeded the permitted continuance period, so he was falsely imprisoned.  The Ninth Circuit has not addressed whether the transfer of a witness or defendant to the prosecuting district constitutes good cause for a reasonable delay beyond the authorized continuance period.  The other circuits have not addressed this exact issue either, but the Eleventh Circuit held that a removal hearing could be held prior to the detention hearing because of the preference that a detention hearing occur in the prosecuting district instead of the arresting district.  United States v. Melendez-Carrion, 790 F.2d

984, 990 (11th Cir. 1986). The Seventh Circuit similarly held that defendants or witnesses do not make their first appearances until they are in front of their prosecuting district rather than in front of the arresting district. United States v. Dominguez, 783 F.2d 702, 705 (7th Cir. 1986). Although these cases are not based on the interpretation of the good cause exception, they do indicate that the courts have permitted a delay in a detention hearing so that the defendant or witness can be transferred to and appear in front of the prosecuting district.

The only case cited by either party that actually addressed recovery under the FTCA for an unreasonable detainee transport time is Occhino v. United States. 686 F. 2d 1302 (8th Cir. 1982). In that case, the plaintiff was detained prior to trial for commitment at a medical facility. Id. at 1304. The transfer of the plaintiff from Minnesota to the facility in Springfield, Missouri took twenty-four days and the return trip took fourteen days. Id. at 1305. The district court held that the fourteen-day transport did not constitute false imprisonment, but the government was liable for the unconscionable and unreasonable twenty-four day transport. Id. The Eight Circuit affirmed the holding regarding the twenty-four day transfer; the reasonableness of the fourteen-day transport was not challenged on appeal, so the Eighth Circuit did not adopt nor disturb it. Id. at 1306 n.3.

The claim here is that because the amount of time between the first appearance in Virginia and the actual date of the detention hearing in Idaho was unreasonable and exceeded the statutory continuance period, the detention constituted false imprisonment. The time between the arrest and his appearance before a court in this District was approximately eight days. The complaint alleges that Mr. al-Kidd was brought in front of a magistrate the day after he was arrested in Virginia and again on the day of his arrival in Boise, Idaho. During each of these appearances Mr. al-Kidd agreed to continuances. Taking these allegations in the complaint as true, the Court concludes that the false

imprisonment claim based on the delay fails to state a claim for false imprisonment. Mr. al-Kidd was promptly taken before the court in Virginia where, neither party disputes, he agreed to continue the hearing until he was transported to Idaho. Again the parties agree that once in Idaho Mr. al-Kidd, upon the advice of counsel, again requested and was granted a short continuance. Thus, although the hearing in Idaho ultimately did not take place until a time beyond the statutory periods prescribed in § 3142, the facts alleged in the complaint demonstrate that the provisions of the statute were met in this case because, as the complaint alleges, Mr. al-Kidd agreed to the continuances. (Dkt. No. 40, ¶ 77, 94). The sticking point between the parties is the statement by the government in the Virginia court that Mr. al-Kidd would be transported "as quickly as possible" and Mr. al-Kidd's contention that the transfer was not done "quickly." (Dkt. No. 40, ¶ 77). Whether or not the eight days it took to complete the transfer was done as "quickly" as promised does not give rise to a claim for false imprisonment in light of the complaint's other factual allegations relating to Mr. al-Kidd's agreement to the continuances.[2] Therefore, the Court will grant the motion to dismiss as to this claim.

III.    Abuse of Process Claim:

Mr. al-Kidd also brings an abuse of process claim under the FTCA. He alleges that the United States misused the material witness statute to detain him preventively and/or to investigate him criminally instead of to secure him as a witness. (Dkt. No. 40, ¶¶ 56, 111–14). Under Idaho law, the elements of an abuse of process claim are "(1) an ulterior, improper purpose; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." Beco Constr.

---

[2] If Mr. al-Kidd argues that the conditions of his detention were excessive and/or that he was coerced or that his agreement to the continuances was not knowingly or voluntary, such arguments raise claims different from false imprisonment.

Co., Inc v. City of Idaho Falls, 865 P.2d 950, 954 (Idaho 1993). The government does not dispute that Mr. al-Kidd alleged sufficient facts to meet these elements, instead the government alleges that Mr. al-Kidd's claim is precluded by two exceptions to the FTCA: the intentional torts and the discretionary functions exceptions. If either of these exceptions apply, this Court lacks subject matter jurisdiction over the claim. Sabow v. United States, 93 F.3d 1445, 1451 (9th Cir. 1996).

    A.    Intentional Torts Exception:

The intentional torts exception precludes claims arising out of various intentional torts, including abuse of process, unless the claim arises out of an act or omission of an investigative or law enforcement officer. 28 U.S.C. § 2680(h). An investigative officer is defined as "any officer of the Unites States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id. Mr. al-Kidd's allegations here are only based on the actions of the investigative officers Mace and Gneckow, not the prosecutors, so the government does not meet the requirements for that exception.

    B.    Discretionary Function Exception:

The discretionary function exception states that the FTCA does not permit recovery for claims arising from the "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The government bears the burden of showing that the discretionary function exception applies. Reed v. U.S. Dept. of Interior, 231 F.3d 501, 504 (9th Cir. 2000).

The United States Supreme Court has dictated a two-part test to determine whether the discretionary function applies. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988).

First, the court must determine whether the action is a matter of choice for the employee, such that it involves an element of judgement or choice. Id. Second, the exception only applies to actions based on considerations of public policy. Id. at 537. Therefore, the government is shielded from liability when the challenged action "involves the permissible exercise of policy judgement." Id. The purpose of the discretionary function exception is to prevent judicial second-guessing of administrative decisions based in social, economic, and political policy. United States v. Gaubert, 499 U.S. 315, 323 (1991). When determining whether the discretionary function applies, the court should examine the conduct in question, not the status of the actor. Berkovitz, 123 F.3d at 536.

Here, the government argues that the prosecutors, not the investigate officers, sought the material witness arrest warrant, so the discretionary function exception applies to bar the abuse of process claim because "the decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability." General Dynamics Corp. v. United States, 139 F.3d 1280, 1283 (9th Cir. 1998). A prosecutor's decision to pursue a case and how to pursue that case is a discretionary function. Id. Prosecutors have the discretion to make those decisions and they have to weigh different policy concerns to reach those decisions. Such decisions are given wide latitude.

Here, the discretionary function exception based on the prosecutorial function does not apply because Mr. al-Kidd's claims do not involve the decision to prosecute. Instead, Mr. al-Kidd alleges that the investigative officers Mace, Gneckow, and Gonzales, in his capacity as the head of the Justice Department, were improperly using the material witness arrest warrant for investigative purposes not prosecutorial decisions. Therefore, based on Mr. al-Kidd's allegations, the

government's argument that the prosecutorial function shields the government from liability is erroneous as it fails to apply to the claims raised in the complaint.

Based on the allegations in the complaint, the next inquiry is whether the discretionary function exception would apply to the actions of the investigative officers. Generally, police investigations are also protected by the discretionary function exception because they involve policy considerations. See Alfrey v. United States, 276 F.3d 557 (9th Cir. 2002). The Ninth Circuit has held that "the discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive." Vickers v. United States, 228 F.3d 944, 951 (9th Cir. 2000). This protection is afforded because federal investigations often require the officers to consider relevant political and social circumstances. Alfrey, 276 F.3d at 565.

The discretionary function exception does not apply, however, if the investigators violated a legal mandate. Galvin v. Hay, 374 F.3d 739, 758 (9th Cir. 2004). The discretionary function only applies if the "decision made is a *permissible* exercise of policy judgement. Conrad v. United States, 447 F.3d 760, 765 (9th Cir. 2006)(emphasis added). Thus, if an officer violates the constitution or a statute during his or her investigation, that action is not protected by the discretionary function exception.

The statute at issue on the abuse of process claim is the material witness statute. (Dkt. No. 40, ¶ 56, 111–14). The purpose of the material witness statute is to secure a material witness when it would be impractical to secure that witness through a subpoena. 18 U.S.C. § 3144. "It would be improper for the government to use [the material witness statute] for other ends, such as the

detention of persons suspected of criminal activity for which probable cause has not yet been established." United States v. Awadallah, 349 F.3d 42, 59 (2d Cir. 2003).

In this case, Mr. al-Kidd claims that the officers abused the material witness statute by using it to detain him preventively and/or investigate him for possible criminal wrongdoing. These allegations, if true, are sufficient to state a claim for abuse of process under the FTCA and, therefore, the motion to dismiss is denied. Whether the discretionary function exception applies in this case raises questions not proper on a motion to dismiss.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that the defendant's Motion To Dismiss (Docket No. 49) is **GRANTED IN PART AND DENIED IN PART**. The motion is denied except as to the Plaintiff's claim of false imprisonment based upon the delay in his transfer.



DATED: **September 18, 2006**

Honorable Edward J. Lodge
U. S. District Judge