UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ABDULLAH AL-KIDD, | ) | Case No. CV:05-093-S-EJL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM ORDER |
| | ) | |
| ALBERTO GONZALES, Attorney General | ) | |
| of the United States; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court in the above entitled matter are a motion to dismiss filed by the individually named Defendants and Plaintiff's motion to substitute. The parties have filed their responsive briefing and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1.

### Factual and Procedural Background

On March 16, 2003 Mr. al-Kidd was handcuffed and arrested pursuant to a material witness warrant at the ticket counter of the Dulles International Airport while he was checking in for his flight to Saudi Arabia. He was taken to various different detention centers and eventually transported back to Idaho where, on March 31, 2003, he was released pursuant to certain terms and conditions which precluded him from leaving a four-state area of the United States. Mr. al-Kidd remained subject to these restrictions until June of 2004 when the trial of United States v. Sami

Omar Al-Hussayen was completed, the trial in which Mr. al-Kidd was named as a material witness. The claims raised in the complaint here relate to the circumstances surrounding Mr. al-Kidd's arrest, detention, and treatment.  The complaint alleges violations of the material witness statute and bail reform act, violations of the Fourth and Fifth Amendments, § 1983 claims, and claims under the Federal Tort Claims Act.  The Defendants relevant to this motion are the individually named Defendants (collectively referred to as "the individual Defendants"): Federal Bureau of Investigation Special Agents Scott Mace and James Gneckow, former Attorney General of the United States John Ashcroft, and former Warden of the Oklahoma Federal Transfer Center Dennis M. Callahan.  Mr. al-Kidd seeks civil damages from these individuals under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**Standard of Review**

I.     Rule 12(b)(2) - Lack of Personal Jurisdiction:

Motions to dismiss for lack of personal jurisdiction are raised pursuant to Federal Rule of Civil Procedure 12(b)(2).  Because this motion is resolved without a hearing, the plaintiff need only make out a *prima facie* case to withstand a motion to dismiss for lack of personal jurisdiction.  See Data Disc, Inc. v. System Tech. Assocs., 557 F.2d 1280, 1285 (9th Cir. 1977).  This requires that the plaintiff demonstrate facts that, if taken as true, would support exercising jurisdiction over the Defendants.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted).  Factual conflicts between the parties contained in their affidavits are

resolved in the plaintiff's favor.  <u>AT & T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).

II.     <u>Rule 12(b)(6) - Failure to State a Claim</u>:

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong presumption against dismissing an action for failure to state a claim.  <u>See</u> <u>Gilligan v. Jamco Dev. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'"  <u>Id.</u> (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), *overruled on other grounds by* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982)).  Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, (1957); <u>see also</u> <u>Hicks v. Small</u>, 69 F.3d 967, 969 (9th Cir. 1995).  A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief.  <u>See</u> <u>United States v. Howell</u>, 318 F.2d 162, 166 (9th Cir. 1963).

**Discussion**

I.     Claims as to Defendant Ashcroft:

The Defendant argues the claims against Mr. Ashcroft should be dismissed because this Court is without personal jurisdiction over him and he is entitled to absolute and qualified immunity on all claims against him.

    A.     Personal Jurisdiction:

Mr. al-Kidd argues that personal jurisdiction exists over Mr. Ashcroft because following the September 11, 2001 terrorist attacks he created a national policy to improperly seek material witness warrants, oversaw the execution of such warrants, and failed to correct the constitutional violations of conducting such actions.  In sum, Mr. al-Kidd contends that Mr. Ashcroft's actions in adopting a policy which results in the depravation of his constitutional rights is sufficient to overcome the motion to dismiss or, at least, allow for further discovery into the claims against Mr. Ashcroft.  Mr. Ashcroft asserts these actions cannot form the basis for personal jurisdiction and that there are no facts alleged that Mr. Ashcroft had any personal involvement in the decision to arrest or detain Mr. al-Kidd.

Personal jurisdiction is required before a court may decide a case in controversy.  U.S. CONST. amend. XIV.  Where a defendant makes a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to demonstrate that jurisdiction is appropriate.  Schwarzenegger, 374 F.3d at 800.  In a Rule 12(b)(2) motion, the Court may consider affidavits and other documents not mentioned in the complaint to make the personal jurisdiction determination.  National Union Fire Ins. Co. v. Aerohawk Aviation, Inc., 259 F.Supp. 2d 1096, 1101 (D. Idaho 2003).  Where a motion is based only on written materials, "the plaintiff need only make a prima facie showing of

MEMORANDUM ORDER - 4

jurisdictional facts." <u>Schwarzenegger</u>, 374 F.3d at 800.  During review, uncontroverted allegations in the complaint must be taken as true and conflicts between the parties must be resolved in favor of the plaintiff.  <u>Id.</u>

Because there is no applicable federal statute governing personal jurisdiction, this Court applies the law of the state in which it sits, in this case Idaho.  <u>Id.</u>  To properly exercise personal jurisdiction over Mr. Ashcroft pursuant to Idaho's long-arm statute, Mr. Ashcroft must meet the requirements of the long-arm statute and the exercise of personal jurisdiction must comply with due process.  <u>See</u> <u>State of Idaho v. M.A. Hanna Co.</u>, 819 F. Supp. 1464 (D. Idaho 1993).  The Ninth Circuit has recognized that when the Idaho Legislature adopted the long-arm statute it intended to exercise all of the jurisdiction available under the Due Process Clause of the United States Constitution.  <u>Lake v. Lake</u>, 817 F.2d 1416, 1420 (9th Cir. 1987), <u>see also</u> <u>Houghland Farms, Inc. v. Johnson</u>, 803 F.2d 978, 981 (Idaho 1990).  Thus, the state and federal limits are co-extensive and an independent review of whether jurisdiction exists under the long-arm clause is unnecessary.  <u>See</u> <u>Data Disc</u>, 557 F.2d at 1286.

There are two forms of personal jurisdiction: general and specific.  <u>Lake</u>, 817 F.2d at 1420. If the defendant has "continuous and systematic" or "substantial" activities within the forum state, that state has general jurisdiction over the defendant.  <u>Id.</u>  Specific jurisdiction over the defendant is based on the quality and nature of the defendant's contacts with the forum state.  <u>Id.</u> at 1421. Neither party alleges that this Court has general jurisdiction over Mr. Ashcroft, so the Court will determine whether it has specific personal jurisdiction over him.

To show that the defendant has sufficient contacts with the forum state to meet the specific personal jurisdiction requirements, the plaintiff must show that (1) the defendant purposefully

MEMORANDUM ORDER - 5
06ORDERS AL-KIDD_2DIS

availed himself of the privileges of the forum state, which invoked the benefits and protections of its laws; (2) the claims arose out of the defendant's forum-state related activities; and (3) the exercise of jurisdiction would be reasonable.  Ziegler v. Indian River Co., 64 F.3d 470, 473 (9th Cir. 1995).

There is no respondeat superior liability in either a § 1983 or a Bivens action; thus, to hold a supervisory official liable the plaintiff must show one or more of the following are met:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

Elmaghraby v. Ashcroft, et. al, No. 04-CV-1409-JG-SMG, 2005 WL 2375202 *14 (E.D.N.Y.) (quoting Richardson v. Goord, 347 F.3d 431, 435 (2nd Cir. 2003)).  Because "[p]ersonal jurisdiction cannot be based solely on a defendant's supervisory position," it must instead be shown that "defendant 'personally took part in the activities giving rise to the action at issue.'" Ontel Prods. Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1148 (S.D.N.Y. 1995).  Where the complaint fails to sufficiently allege a defendant's involvement in any of the alleged violations of plaintiff's rights, a motion to dismiss should be granted.  Where, however, such involvement is alleged but discovery is necessary to ascertain the extent of that involvement, the jurisdiction question overlaps with the merits of the claims and the motion to dismiss should be denied so as to allow discovery to go forward to resolve the question. See Crawford-El v. Britton, 523 U.S. 574 (1989); see also Data Disc, 557 F.2d at 1285 (stating where "the jurisdictional facts are enmeshed with the merits, ... [the Plaintiff need only] establish a prima facie showing of jurisdictional facts with affidavits and

perhaps discovery materials"). What is required on a motion to dismiss is that the complaint provide

the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests"

as required by Federal Rule of Civil Procedure 8(a).  See Swierkiewicz v. Sorema N.A., 534 U.S.

506, 512 (2002) (citation omitted).

      The complaint here is replete with general allegations regarding the Department of Justice

policies following September 11, 2001 including that the Department of Justice adopted a new

policy and practice after September 11, 2001 which used the material witness statute as "a pretext

to arrest and hold individuals whom the government lacked probable cause to charge with a crime

but nonetheless wished to detain preventively and/or investigate for possible criminal

wrongdoing...." (Dkt. No. 40).  The complaint goes on to allege that as a result of this new practice

individuals were held for "unreasonably prolonged" periods of time as material witnesses and

routinely detained in high-security detention conditions as "terrorism suspects, rather than true

witnesses." (Dkt. No. 40).  These generalized and conclusory allegations alone are insufficient to

invoke personal jurisdiction over any of the named Defendants in this action.  They do, however,

lend weight to the complaint's allegations that Mr. Ashcroft knew or should have known of the

alleged violations given the level of publicity coverage over the allegations that the Department of

Justice was using the material witness statute in an unlawful and abusive manner.  (Dkt. No. 40,

¶ 136-41).

      The complaint asserts Mr. Ashcroft, as the head of the Department of Justice, was the

"principal architect of, authorized and set into motion, these policies and practices regarding the

material witness statute, and had responsibility for their implementation and administration" and that

Mr. Ashcroft knew or should have known of the "unlawful, excessive, and punitive manner in which

MEMORANDUM ORDER - 7
06ORDERS AL-KIDD_2DIS

the federal material witness statute was being used" and should have foreseen the resulting constitutional violations and failed to act to correct such violations.  (Dkt. No. 40, ¶ 136-141).

These allegations against Mr. Ashcroft are sufficient to withstand the motion to dismiss based on a lack of personal jurisdiction.  While a superior cannot be held liable simply by virtue of his position, where a plaintiff alleges sufficient facts to state a claim that the defendant was personally involved in the alleged violations and/or knew or should have known of the violations and failed to correct the conduct the superior may be liable.  See Hydrick v. Hunter, 449 F.3d 978, 991 (9th Cir. 2006) (recognizing "a supervisor is liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'") (citation omitted).  The allegations in the complaint in this case are based on more than Mr. Ashcroft's supervisory status, as the Defendant argues.  Here the claims against Mr. Ashcroft contend that he spear-headed the post-September 11, 2001 practice of the Department of Justice to use the material witness statute to detain individuals whom they sought to investigate but had not charged with a crime.  Additionally, that Mr. Ashcroft either knew or should have known the violations were occurring and did not act to correct the violations.  Further, the complaint alleges Mr. Ashcroft knew or should have known of the constitutional violations to witnesses held pursuant to the unlawful policy, including Mr. al-Kidd.  As such, the complaint has alleged facts which, if true, would subject Mr. Ashcroft to jurisdiction in this District and have stated a claim upon which relief could be granted.  These allegations are sufficient to withstand the motion to dismiss.  See Elmaghraby v. Ashcroft, No. 04-CV-1409-JG-SMG, 2005 WL 2375202 *10 (E.D.N.Y. 2005).

B.   <u>Absolute Immunity</u>:

Mr. Ashcroft argues that he enjoys absolute immunity against these claims arguing the prosecutorial immunity doctrine applies.  Such immunity, he argues, exists here because the complaint's allegations fail to state a claim as they improperly focus on the Defendant's motives in seeking the warrant when the proper inquiry for the claims turns on the nature or function of the Defendant's activity, not the intent or motive.  Prosecutors are absolutely immune from civil liability for their conduct insofar as it is "intimately associated" with the judicial phase of the criminal process.  <u>Botello v. Gammick</u>, 413 F.3d 971, 975-76 (9th Cir. 2005) (quoting <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991)) (citations omitted).  The Ninth Circuit has recently detailed the immunity afforded to prosecutors in the context of § 1983 actions:

> A prosecutor is protected by absolute immunity from liability for damages under § 1983 "when performing the traditional functions of an advocate." <u>Kalina v. Fletcher</u>, 522 U.S. 118, 131 (1997).  However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).  Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it." <u>Kalina</u>, 522 U.S. at 127 (quoting <u>Forrester v. White</u>, 484 U.S. 219, 229 (1988)).  Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or "investigative functions normally performed by a detective or police officer." <u>Id.</u> at 126; <u>see also</u> <u>Burns v. Reed</u>, 500 U.S. 478, 494-96 (1991).

<u>Genzler v. Longanbach</u>, 410 F.3d 630, 636 (9th Cir. 2005); <u>see also</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999) (recognizing that <u>Bivens</u> cases employ the same standard as that used in § 1983 cases).  Mr. al-Kidd argues that the nature and function of Mr. Ashcroft's actions were not prosecutorial but investigative and, at best are only afforded qualified immunity.  Mr. Ashcroft maintains that any involvement on his part was as a prosecutor.

MEMORANDUM ORDER - 9
06ORDERS AL-KIDD_2DIS

Although the line between the functions is not entirely clear, it is clear that absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct."  Botello, 413 F.3d at 975-76 (quoting Burns, 500 U.S. at 494).  "On the one hand, it is well established that a prosecutor has absolute immunity for the decision to prosecute a particular case, and for the decision not to prosecute a particular case or group of cases."  Id.  In addition, a prosecutor's professional evaluation of a witness is entitled to absolute immunity "even if that judgment is harsh, unfair or clouded by personal animus."  Id.; see also Genzler, 410 F.3d at 636-38 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 ( 1993) ("The Supreme Court rejected the idea that prosecutors are only entitled to qualified immunity when they are engaged in investigation" stating in Buckley, that "'evaluating evidence and interviewing witnesses' in preparation for trial is advocacy even though such pretrial activities may be 'investigatory' in nature.").

However, "prosecutors are not entitled to absolute immunity for advising police officers during the investigative phase of a criminal case, performing acts which are generally considered functions of the police, acting prior to having probable cause to arrest, or making statements to the public concerning criminal proceedings."  Botello, 413 F.3d at 976-77 (citations omitted).  "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  Buckley, 509 U.S. at 274.  "[A] determination of probable cause does not guarantee a prosecutor absolute immunity for liability for all actions taken afterwards. Even after that determination ... a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity."  Id. at 274 n. 5.

MEMORANDUM ORDER - 10
06ORDERS AL-KIDD_2DIS

"The question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." Genzler, 410 F.3d at 636-38.  To determine whether an action is judicial, administrative or investigative, the court looks at "the nature of the function performed, not the identity of the actor who performed it." Botello, 413 F.3d at 975-76 (quoting Kalina v. Fletcher, 522 U.S. 118, 127 (1997)) (citation omitted). Thus, whether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged.  Id.  The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question. Id. (citing Buckley, *supra).*  The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties.  Id. (citing Burns, *supra*).

The particular function which Mr. al-Kidd alleges was taken by Mr. Ashcroft resulting in the constitutional violations was the development and implementation of a new policy and practice  for use of the material witness statute as an investigative tool to detain and/or investigate for possible criminal wrongdoing or to otherwise hold certain individuals preventively where the Government lacked probable cause.  The allegations are that Mr. Ashcroft "directed and oversaw an investigative law enforcement policy and that he used the material witness statute to preventively detain and investigate suspects."  (Dkt. No. 63, p. 30).  As a result of this policy, Mr. al-Kidd alleges his constitutional rights were violated and Mr. Ashcroft knew, should have known, or acted with reckless disregard and deliberate indifference in failing to correct the policy.  As this new policy

MEMORANDUM ORDER - 11

applies to Mr. al-Kidd's case, he points to various Government reports and the testimony of Director Mueller's testimony before Congress.

The allegations here relate to Mr. Ashcroft's actions which fall within the investigation realm of the type normally done by police. The development and practice of using the material witness statute to detain individuals while investigating possible criminal activity qualifies as police type investigative activity, not prosecutorial advocacy. Accordingly, Mr. Ashcroft is not entitled to absolute immunity but may be entitled to qualified immunity, which is discussed below.

II.    <u>Qualified Immunity</u>:

Government officials enjoy qualified immunity when performing discretionary functions such that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The test for evaluating a qualified immunity claim is to first "determine whether the plaintiff has shown that the action complained of constituted a violation of his or her constitutional rights. If the court is satisfied that a constitutional violation occurred at the hands of a government official, the second step is to determine: (1) whether the violated right was clearly established and (2) whether a reasonable public official could have believed that the particular conduct at issue was lawful. As such, the process of determining qualified immunity is an examination of the 'objective legal reasonableness' of a government official's conduct." <u>Id.</u> at 818.

A.    <u>Defendants Mace and Gneckow</u>:

The claims against Defendants Mace and Gneckow are primarily related to their involvement in obtaining the material witness warrant. Agent Mace prepared and signed the affidavit supporting

MEMORANDUM ORDER - 12
06ORDERS AL-KIDD_2DIS

the warrant application and Agent Gneckow provided the information to Agent Mace upon which

the application and affidavit were based.[1]  The motion to dismiss asserts Defendants Mace and

Gneckow are entitled to qualified immunity because the arrest warrant was supported by probable

cause, or at least "arguable" probable cause, as required by 18 U.S.C. § 3144.  Mr. al-Kidd alleges

the complaint properly states a claim against agents Mace and Gneckow because probable cause for

the issuance of the warrant did not exist; raising arguments involving the <u>Franks</u> and <u>Malley</u> tests

arguing the statements made in the affidavit were deliberately false and contained material

omissions.

Mr. al-Kidd further asserts that the probable cause requirements for issuance of a material

witness warrant are a different inquiry than that for an arrest warrant for a criminal suspect.  In

---

[1]

The three paragraphs of the affidavit (Dkt. No. 40, pp. 50-51) most applicable here state:

6) On February 13, 2003, an Indictment was filed ... alleging...False Statement to the United States; and ... Visa Fraud.  During the course of that investigation, information was developed regarding the involvement of Abdullah Al-Kidd with [Sami Omar Al-Hussayen].  That information includes that from March 2000 to November 2001, an individual identified as [Mr. al-Kidd], and/or his spouse, Nadine Zegura, received payments from Sami Omar Al-Hussayen and his associates in excess of $20,000.00.  Al-Kidd traveled to Sana'a, Yemen, in August 2001 and remained there until April 2002, when he returned to the United States.  Upon his return to the United States, Al-Kidd traveled to Moscow, Idaho, and met with Al-Hussayen's associates.  While in Moscow, Al-Kidd emptied a storage facility which contained personal items belonging to him.  Among those personal items were documents Al-Kidd left behind, which included a conference program for the second annual IANA conference in Dearborn, Michigan, in December 1994; a hotel receipt from Sacramento, California, dated 4/26/2001, in the name of Abdullah Al-Kidd, listing his company name as "Al-Multaqa;" and telephone numbers for IANA (734-528-0006) and Basem Khafagi (734-481-1930).  Khafagi is a former Director of IANA and former University of Idaho student (graduated in 1988) who was recently arrested in New York.

7) Kidd is scheduled to take a one-way, first class flight (costing approximately $5,000.00) to Saudi Arabia on Sunday, March 16, 2003, at approximately 6:00 EST.  He is scheduled to fly from Dulles International Airport to JFK International Airport in New York and then to Saudi Arabia.

8) Due to Al-Kidd's demonstrated involvement with the defendant, Sami Omar Al-Hussayen, he is believed to be in possession of information germane to this matter which will be crucial to the prosecution.  It is believed that if Al-Kidd travels to Saudi Arabia, the United States Government will be unable to secure his presence at trial via subpoena.

MEMORANDUM ORDER - 13

support of this argument, Mr. al-Kidd relies upon Bacon v. United States, 449 F.2d 933 (9th Cir. 1971). In that case, Bacon was arrested under a material witness arrest warrant in order to secure her testimony before a grand jury. Mr. al-Kidd relies on dicta in the opinion where the court, after finding the affidavit submitted in support of the arrest warrant failed to show that Bacon was likely to flee, distinguished the case from the situation where a witness was served with a subpoena. The service of a subpoena, the court noted, would have given Bacon an opportunity, as afforded to most witnesses, to voluntarily comply with the subpoena before being arrested and/or detained. The court concluded that the denial of that opportunity was not warranted on the facts in Bacon's case. Id. at 945. This language and reasoning does not, as Mr. al-Kidd contends, stand for the proposition that all potential witnesses must be given to an opportunity to appear to testify prior to a material witness arrest warrant being sought and executed. What is required for the issuance of a material witness arrest warrant is that "the judicial officer must have probable cause to believe (1) 'that the testimony of a person is material' and (2) 'that it may become impracticable to secure his [or her] presence by subpoena.'" Id. at 943 (quoting 18 U.S.C. § 3149). Here, the Government asserts that probable cause was shown on both prongs of the test and, therefore, the individual Defendants are entitled to qualified immunity.

As to the materiality question the Government states that the "warrant application presented evidence that plaintiff was involved in business activities that served as the basis for the underlying prosecution of Sami Omar Al-Hussayen" and "[o]n that basis, Judge Williams correctly concluded that there was probable cause to believe that plaintiff's testimony could be material." (Dkt. No. 71, p. 7 n. 4). Further, the Government points out that "'a mere statement by a responsible official, such as the United States Attorney, is sufficient to satisfy' the materiality criterion." Bacon, 449 F.2d 943

MEMORANDUM ORDER - 14
06ORDERS AL-KIDD_2DIS

(distinguishing between the first prong and the second prong concluding that the second prong requires more than mere assertions).  As to the second prong, the Government maintains that the impracticability requirement is analyzed consistent with the case law addressing whether an individual is a flight risk and that the Court should look at the totality of the circumstances in making the determination. (Dkt. No. 71, p. 9).  Applying this standard, the Government argues Mr. al-Kidd was a flight risk as he was business associate and potential witness in the trial of Mr. Al-Hussayen which involved terrorism related charges; he was scheduled to travel to Saudi Arabia where there is no extradition treaty with the United States after Mr. Al-Hussayen's indictment and arrest; it appeared that Mr. al-Kidd had the resources, connections, and skills necessary to remain abroad for an extensive period of time and avoid apprehension; he did not report his travel plans to law enforcement nor offer to return for trial or provide any contact information. (Dkt. No. 71, p. 12). The Government also contends Mr. al-Kidd should have consulted with law enforcement regarding his travel plans before leaving because he was aware of the investigation and indictment of Mr. Al-Hussayen and that he was a potential witness in the case.  (Dkt. No. 71, p. 12 n. 10).

On the other hand, Mr. al-Kidd argues probable cause was not shown in the warrant affidavit as to either prong of the test.  In addition, Mr. al-Kidd asserts that the affidavit contained false statements and omissions which were misleading to the magistrate judge's determination of whether to issue the warrant.  In particular, he notes that the affidavit omitted the fact that he was a native-born United States citizen with family ties to the United States, had cooperated with the FBI previously, was not informed that he could not travel or that he needed to inform the FBI of his travel plans, and was not asked to testify or make himself available to testify prior to the

Government seeking a warrant.[2]  The affidavit also, he contends, falsely represented that he had a one-way first class ticket costing $5,000 to Saudi Arabia when he actually had a round-trip coach ticket costing $1,700.

The question before the Court on this motion is the limited question of whether or not the complaint states a cause of action upon which relief can be granted.  To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right."  Souders v. Lucero, 196 F.3d 1040, 1043 (9th Cir. 1999) (citation omitted); see also Wilson, 526 U.S. at 609 (recognizing that Bivens cases employ the same standard as that used in

---

[2]  Specifically, Mr. al-Kidd notes the following omissions and false statements:

1)   failing to state Mr. al-Kidd and Mr. Al-Hussayen worked together for the same charitable Islamic organization and that Mr. Al-Hussayen was responsible for paying Mr. al-Kidd's salary; thus the $20,000 he received was his salary for work performed over a significant period of time.  (Dkt. No. 40, ¶ 60).

2)   failing to state that Mr. al-Kidd was a native-born United States citizen with substantial ties to the United States, including his native-born United States citizen mother, father, sibling, wife, and child.  (Dkt. No. 40, ¶¶ 15, 39, 40).

3)   failing to state that Mr. al-Kidd had previously cooperated and talked with the FBI, voluntarily answering questions and appearing at all pre-arranged meetings.  (Dkt. No. 40, ¶¶ 15, 54).

4)   failing to state that the FBI had not contacted Mr. al-Kidd for six months at the time of the application and the FBI had not told him he might be needed as a witness, could not travel abroad, or that he needed to inform the FBI of such travel.  (Dkt. No. 40, ¶¶ 15, 54).

5)   failing to state that the FBI had not sought Mr. al-Kidd's voluntary cooperation, agreement to testify, or willingness to remain in the United States to be available to testify prior to seeking the warrant.

6)   falsely stating the facts related to his air travel as being a one-way, first-class ticket costing approximately $5,000 when the ticket was a round-trip coach ticket costing approximately $1,700.  (Dkt. No. 40, ¶¶ 14, 53).

§ 1983 cases).  "In order to state a claim under § 1983 for statements in an affidavit to procure a warrant, a plaintiff must show that the investigator made deliberately false statements or recklessly disregarded the truth in the affidavit and that the fabrications were material to the finding of probable cause."  <u>Gailbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002) (citations and quotations omitted).  The threshold inquiry is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws."  <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979).

Taking the allegations as true, as the Court must on this motion, the Court concludes that the complaint adequately states causes of action upon which relief can be granted.  The parties both raise arguments as to the question of whether probable cause existed for the issuance of the material witness arrest warrant in this case.[3]  Generally, police officers are entitled to qualified immunity if a reasonable officer in his or her position would have an arguable basis to believe probable cause existed to arrest or to seek an arrest warrant "in light of clearly established law and the information the [arresting] officers possessed.'"  <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1294 (9th Cir. 1999) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (citation omitted).

Mr. al-Kidd's allegations are that probable cause was not shown in the warrant application and, therefore, his constitutional rights were violated.  Mr. al-Kidd asserts that in seeking the warrant the officers made material omissions and misstatements upon which the magistrate judge relied in determining probable cause existed and granting the request for a warrant.  The Defendants have challenged these allegations and have asserted their own affirmative defenses to the claims.  The

---

[3]  The Government states in its reply that Mr. al-Kidd has not challenged the materiality requirement of 18 U.S.C. § 3144 (Dkt. No. 71, p. 7), however, in his response brief Mr. al-Kidd does contend that probable cause did not exist as to the materiality question.  (Dkt. No. 63, p. 17).

MEMORANDUM ORDER - 17
06ORDERS AL-KIDD_2DIS

Defendants' arguments dispute the factual allegations in the complaint and ask the Court to weigh the facts going to the probable cause determination contrary to the facts alleged in the complaint. This is not the appropriate inquiry on this motion.  The question of whether qualified immunity applies to the officers in this case can not be resolved on a motion to dismiss for failure to state claim in light of requirement to assume the truth of facts as plead.  Morley v. Walker, 175 F.3d 756, 760 (9th Cir. 1999).  While true that "arguable probable cause" could entitle the officers to the qualified immunity defense, Hunter, 502 U.S. at 227, Mr. al-Kidd's factual allegations here regarding the officers' misrepresentations and omissions in the warrant application, if true, would negate the possibility of qualified immunity regardless of the probable cause finding and, therefore, the complaint survives the motion to dismiss.  See Morley, 175 F.3d at 761; see also Mendocino Environmental Center, 192 F.3d at 1294 n. 18 ("The issue is not whether the contents of the affidavits, if true, were adequate to provide probable cause.  Rather, here, the [plaintiff's] contention is that the [defendants] obtained the warrants by misrepresenting the facts in the affidavits.").  The Court also notes that many of the cases cited by the Defendants to support their arguments involved motions for summary judgment which apply a different standard.  Because the facts alleged in the complaint state causes of action upon which relief can be granted, the Court will deny the motion to dismiss.

        B.      <u>Defendant Ashcroft:</u>

        Mr. Ashcroft also asserts that qualified immunity precludes any liability against him because there are no factual allegations that he was personally involved in any decisions relating to Mr. al-Kidd's arrest, detention, and conditions of confinement or even aware of such conditions or detention.  Defendant argues the vague and conclusory allegations in the complaint allege nothing

MEMORANDUM ORDER - 18
06ORDERS AL-KIDD_2DIS

more than a claim against Mr. Ashcroft based upon his supervisory status but not upon his actual personal involvement.  The Court finds the allegations in the complaint, if true, are sufficient on this motion to raise a claim for relief against Mr. Ashcroft as to his involvement in the constitutional violations allegedly incurred by Mr. al-Kidd.  As decided above in the personal jurisdiction section, the allegations against Mr. Ashcroft involve more than vicarious liability but assert claims involving Mr. Ashcroft's own knowledge and actions related to Mr. al-Kidd's alleged constitutional deprivations.  Whether these allegations can be substantiated is a question to be decided later.

III.    <u>Claims as to Defendant Callahan</u>:

Mr. Callahan argues dismissal of all claims against him is warranted as he did not become the warden of the Oklahoma Federal Transfer Center until after Mr. al-Kidd was released.  In response, Mr. al-Kidd has conceded that Mr. Callahan should be dismissed and filed a motion to substitute John Sugrue, the Warden of the Oklahoma Federal Transfer Center at the time of Mr. al-Kidd's detention.  (Dkt. No. 58).  Accordingly the Court will dismiss Mr. Callahan as a party in this action.

As to the motion to substitute Mr. Sugrue in this case, the Defendants have filed an opposition to the motion arguing the motion is untimely, fails to meet the precepts of Rule 15(c), and because the Court lacks personal jurisdiction over Mr. Sugrue and the claims are without merit.  Mr. al-Kidd disagrees and maintains the substitution should be allowed and his claims should relate back to the time of the filing of the complaint pursuant to Federal Rule of Civil Procedure 15(c)(3).

The Government argues the requirements for service and notice of Rule 15(c)(3) are not met here because they do not allow for notice by way of service upon the United States in the case of claims raised against a person in their individual capacity.  Mr. al-Kidd maintains that Rule 15(c)(3)

allows for relation-back of claims against government defendants sued individually.  Rule 15(c)

states:

> (c)    Relation Back of Amendments. An amendment of a pleading relates back to
> the date of the original pleading when
>> (1)    relation back is permitted by the law that provides the statute of
>> limitations applicable to the action, or
>> (2)    the claim or defense asserted in the amended pleading arose out of
>> the conduct, transaction, or occurrence set forth or attempted to be set
>> forth in the original pleading, or
>> (3)    the amendment changes the party or the naming of the party against
>> whom a claim is asserted if the foregoing provision (2) is satisfied
>> and, within the period provided by Rule 4(m) for service of the
>> summons and complaint, the party to be brought in by amendment
>> (A) has received such notice of the institution of the action that the
>> party will not be prejudiced in maintaining a defense on the merits,
>> and (B) knew or should have known that, but for a mistake
>> concerning the identity of the proper party, the action would have
>> been brought against the party.
>
> The delivery or mailing of process to the United States Attorney, or United States
> Attorney's designee, or the Attorney General of the United States, or an agency or
> officer who would have been a proper defendant if named, satisfies the requirement
> of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States
> or any agency or officer thereof to be brought into the action as a defendant.

Four factors generally guide a court's determination regarding whether to allow an amendment to

a pleading: undue delay, bad faith, prejudice to the opposing party, and futility of amendment.  See

Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997).  Amendments to the complaint are

allowed in cases where "the previously unknown defendants were identified only after the statute

of limitations had run."  Blackhawk v. City of Chubbuck, No. 04-CV-629-E-BLW, 2005 WL

3244406 *1 (D.Idaho Nov. 21, 2005)  (citations omitted).

Here, Mr. Callahan was named in his individual capacity as warden of the Oklahoma Federal

Transfer Center at the time Mr. al-Kidd was held there.  Upon discovering that Mr. Sugrue was

MEMORANDUM ORDER - 20
06ORDERS AL-KIDD_2DIS

actually the warden at the time applicable here, Mr. al-Kidd has sought to amend the complaint to name the appropriate individual.  This was clearly a mistake on the part of Mr. al-Kidd caused by the fact that he was wrongly informed at the time of the filing of the initial complaint.  Further, it appears the Defendants "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  Fed. R. Civ. P. 15(c)(3)(B); see also Blackhawk v. City of Chubbuck, No. 04-CV-629-E-BLW, 2005 WL 3244406 *1 (D.Idaho Nov. 21, 2005) ("In the Ninth Circuit, the mistake requirement is construed more liberally than in other circuits.").  Therefore, the question on this motion turns on whether the notice requirements of Rule 15(c)(3) are met.

Here, Mr. al-Kidd argues the notice was timely made by service of the complaint upon the United States, that the requested amendment will not prejudice the defense, and that the Government knew or should have known that but for the mistake the action would have been brought against the proper party.  The Government disputes that the notice requirements were met.  "The Ninth Circuit recognizes the 'imputed notice'/ 'community of interest' theory which, for the purpose of applying relation back, allows courts to infer notice when the party actually notified and the party assumedly notified 'are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'"  Blackhawk v. City of Chubbuck, No. 04-CV-629-E-BLW, 2005 WL 3244406 *1 (D.Idaho Nov. 21, 2005) (citing G.F. Co. v. Pan Ocean Shipping, 23 F.3d 1498, 1503 (9th Cir. 1994) (quoting 6A Charles Miller, et al., Federal Practice and Procedure § 1499 at 146 (2d ed.1990)).  The Court finds the notice requirement here is satisfied.  "Informal notice is sufficient if it allows the defendant the opportunity to prepare a defense."  Abels v. JBC Legal Group, P.C., 229 F.R.D. 152, 157 (N.D.Cal. Jun. 23, 2005) (citing

MEMORANDUM ORDER - 21

Craig v. United States, 479 F.2d 35, 36 (9th Cir. 1973)).  The Government was properly served with the initial complaint in this matter, the claims against Mr. Sugrue remain the same as those raised against Mr. Callahan, the attorney's representing Mr. Sugrue remain the same, and the Government's response to the motion itself demonstrates that Mr. Sugrue will not be prejudiced and is able to present a defense to the charges.  Accordingly, the Court will grant the motion to substitute Mr. Sugrue for Mr. Callahan.  The amendments shall relate back to the date of the filing of the original complaint.

The Government also alleges that the proposed amendment should be denied as it is frivolous because the Court lacks jurisdiction over Mr. Sugrue and/or because Bivens actions do not allow for vicarious liability.  Mr. al-Kidd opposes both claims.  Though the Court recognizes that "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend," the question of whether or not Mr. Sugrue is subject to personal jurisdiction and/or whether the complaint states a cause of action upon which relief can be granted are issues not yet fully briefed by the parties. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  In response to the Government's motion to dismiss, Mr. al-Kidd conceded the error in naming Mr. Callahan and filed the instant request to substitute parties.  Accordingly neither party completed the briefing on these questions on the motion to dismiss or as the arguments apply to this Defendant.  Therefore, the Court will allow Mr. Sugrue leave to file a motion to dismiss on or before October 30, 2006.  The parties shall file their responsive briefing accordingly and the Court will render its decision in due course.

# ORDER

Based on the foregoing and being fully advised in the premises, the Court HEREBY

ORDERS as follows:

1)      The Motion to Substitute Party (Dkt. No. 58) is **GRANTED**.  The Clerk of the Court
        is directed to **DISMISS** Defendant Dennis Callahan from the action and
        **SUBSTITUTE** Defendant John Sugrue, Former Warden, Oklahoma Federal
        Transfer Center, in the place of Defendant Dennis Callahan.

2)      The Motions to Dismiss (Dkt. Nos. 47, 55) are **DENIED**.

3)      The Government is granted leave to file a motion to dismiss as to Defendant Sugrue
        on or before October 30, 2006.

DATED:  **September 27, 2006**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 23
06ORDERS AL-KIDD_2DIS