IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABDULLAH AL-KIDD, )<br>   )<br>   Plaintiff, )<br>   )<br>-vs- )<br>   )<br>ALBERTO GONZALES, et al., )<br>   )<br>   Defendants. )<br>   )<br>   )<br>   ) | **CASE NO. CV 05-093-EJL-MHW**<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff filed a motion to compel (Docket No. 176) to obtain documents from the United States, FBI Agent Scott Mace, and FBI Agent Michael Gneckow (the "Federal Defendants"). Specifically, Plaintiff wants (1) immediate production of documents withheld or redacted and described in Exhibits 1 and 2 to Plaintiff's motion; and (2) for all other documents withheld, an affidavit from the appropriate agency explaining the basis for the privilege asserted. Mem. at 7, Docket No. 176. Defendants also filed a motion to submit Mr. McJunkin's declaration for *in camera* review. Docket No. 191.

The Federal Defendants submitted a Response Memorandum with five affidavits from various government personnel explaining the privileges asserted, some of which were filed under seal and one filed ex parte, in camera. *See* Docket Nos. 188, 189 and exhibits thereto. The

affidavits explain the basis behind the assertion of several privileges, the majority of which are law enforcement privileges. On November 5, 2007, Federal Defendants also submitted Supplemental Responses to Plaintiff's First Interrogatories. Ex. B, Docket No. 188. Despite these additional submissions, the parties have not been able to resolve their discovery dispute.

The Court heard oral argument on November 14, 2007, and after carefully reviewing the parties' submissions, issues this memorandum decision and order.

## II.
## Background

The facts and procedural background are fully explained in the Court's two prior memorandum decisions (Docket Nos. 78, 79), and will be briefly summarized. As part of an anti-terrorism investigation, Mr. al-Kidd was detained as a material witness in a case against Sami Omar Al-Hussayen. FBI Agent Gneckow and other law enforcement agents investigated the information for the material witness warrant, while FBI Agent Mace executed the affidavit in support of the warrant. Based upon the affidavit, the application was approved and a material witness arrest warrant issued for Mr. al-Kidd on March 14, 2003. Mr. al-Kidd was arrested on March 16, 2003, and remained in custody in Virginia. He was then was transferred to Oklahoma and eventually to Idaho, where he was finally released from custody on March 31, 2003. His release was conditioned upon surrender of his passport, restriction of travel and mandatory reporting to a probation officer. Ultimately, the government never called Mr. al-Kidd to testify in the Al-Hussayen trial and his release conditions were removed on June 16, 2004.

As a result of the government's actions, Mr. al-Kidd filed a complaint under the Federal Tort Claims Act alleging various constitutional and statutory claims against the Federal

Defendants, as well as against other state and federal law enforcement officials. The claims against the Federal Defendants are that the affidavit FBI agents Gneckow and Mace submitted to the Court in support of the government's request for an arrest warrant under the material witness statute was deficient because it included false information. Mem. at 3, Docket No. 176. Further, Plaintiff alleges that his arrest and detention were unlawful because the Federal Defendants did not genuinely view him as a witness, but rather as a terrorism suspect . Plaintiff argues the Federal Defendants were using the material witness statute as a pretext to arrest and detain him because they did not have probable cause to arrest him on criminal charges. Mem. at 4, Docket No. 176. In the decision denying the Federal Defendants' motion to dismiss, Judge Lodge stated that "[t]hese allegations, if true, are sufficient to state a claim for abuse of process" under the Federal Tort Claims Act. Order at 16, Docket No. 78.

In his motion to compel, Plaintiff alleges the Federal Defendants have withheld information on the basis that it is privileged from disclosure under the law enforcement privilege, informant privilege, the deliberative process privilege, and the official information privilege. Mem. at 6, Docket No. 176. Federal Defendants' privilege log contains several categories of documents withheld on the grounds of these enforcement privileges, and for which Plaintiff seeks immediate production. Ex. 1, Docket No. 176.[1] First, Plaintiff requests an appropriate affidavit regarding the privileges asserted for nondisclosure of documents identified in category 1 of Federal Defendants' privilege log. Reply Mem. at 2, Docket No. 187; Addendum A, Docket No. 176. Second, Plaintiff seeks immediate production of documents

---

[1] Plaintiff does not challenge the documents allegedly protected by the attorney client or work product privileges that are listed in Federal Defendants' privilege log, Exhibit 1, Docket No. 176, or in the deletion code document, Appendix B, Docket No. 176.

identified in categories 2, 12, 15, and 16 of Federal Defendants' privilege log. Pls.' Reply at 1 n.2, Docket No. 187; Ex. 1, Docket No. 176. Federal Defendants have filed under seal Exhibit 2, which contains redacted documents that Plaintiff wants produced in their unredacted form. Docket No. 177. Addendum B explains the privileges associated with the "Deletion Codes" inserted into the text of the documents contained in Exhibit 2. Addendum B, Docket No. 176.

The specific privileges asserted in the privilege log, Federal Defendants' responses to interrogatories and requests for production, and in the "Deletion Code" explanation for which Plaintiff seeks production are as follows: state secrets; law enforcement; official files; deliberative process; grand jury materials; identity of informant or confidential source; information obtained from foreign governments under an agreement of confidentiality; FBI file numbers representing specific individuals; investigative interests; investigative techniques; personal information of government and other law enforcement personnel; and various statutory privileges, which include 50 U.S.C. §§ 1806, 1825; 28 C.F.R. § 0.39b; and 18 U.S.C. § 3123. Federal Defendants also objected to producing information they assert is not relevant to Plaintiff's claims and that would be unduly burdensome to produce.

## II.
## Discussion

**A.      Documents Relating to Foreign Intelligence Investigation of Al-Hussayen.**

Plaintiff seeks documents relating to a foreign intelligence investigation of Sami Omar Al-Hussayen, which Federal Defendants identified in category 1 of Federal Defendants' privilege log. Mem. at 1 n.2, Docket No. 187. It is unknown how many documents exist in this category. *See* Privilege Log, Category 1, Addendum A, Docket No. 176. Federal Defendants

have objected to production of these documents under the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1806 and 1825 ("FISA"), as well as state secrets, law enforcement, and official files. Plaintiff clarified that, at this time, he wants an affidavit explaining the basis for withholding the documents. Federal Defendants, on the other hand, claim that Plaintiff's motion to compel is untimely, or in the alternative, seek additional time to follow the procedures in 50 U.S.C. §§ 1806 and 1825, which requires an affidavit from the Attorney General, *in camera* review, and appropriate protection under a protective order. Response, Docket No. 186. In order to comply, Federal Defendants request an extension until January 4, 2008, to respond to Plaintiff's request. Response at 5, Docket No. 186. Plaintiff is not opposed to an extension, provided he will receive the documents identified in this category prior to the last scheduled deposition on January 9, 2008. Reply at 3, Docket No. 187. Federal Defendants did not submit a responsive affidavit from the Attorney General.

Under 50 U.S.C. § 1806, "[n]o information acquired from an electronic surveillance pursuant to this subchapter may be used or disclosed by Federal officers or employees except for lawful purposes." 18 U.S.C. § 1806(a). If an "aggrieved person" makes a request or files a motion pursuant to a statute or rule of the United States to discover materials relating to electronic surveillance, and the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, the District Court is required to

> review in camera and ex parte the application, order, and such
> other materials relating to the surveillance as may be necessary to
> determine whether the surveillance of the aggrieved person was
> lawfully authorized and conducted. In making this determination,
> the court may disclose to the aggrieved person, under appropriate
> security procedures and protective orders, portions of the

MEMORANDUM DECISION AND ORDER - 5

>application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

18 U.S.C. § 1806(f). If the Court determines that the surveillance was not lawfully authorized or conducted, it "shall . . . suppress the evidence which was unlawfully obtained or derived from electronic surveillance." 18 U.S.C. § 1806(g). 18 U.S.C. § 1825 has identical language and disclosure procedures, but it relates to information acquired from a physical search rather than electronic surveillance.

An "aggrieved person" is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k). Aggrieved persons have a cause of action against persons who committed a violation of the statute. 50 U.S.C. § 1810. *See also Al-Haramain Islamic Foundation v. Bush*, 451 F.Supp. 2d 1215, 1230 (D. Ore. 2006) (construing the FISA in a motion to compel surveillance materials allegedly protected from disclosure), *rev'd and remanded*, ___ F.3d ___, No. 07-109 (9th Cir. Nov. 16, 2007) (remanding for consideration whether FISA preempted common law state secretes privilege).

Plaintiff qualifies as an "aggrieved person" if the surveillance of Sami Omar Al-Hussayen resulted in surveillance of Plaintiff's activities that may have led to the warrant. If a motion is made to discover the materials allegedly protected by the statute, the Court appears limited to reviewing whether or not the surveillance or search was lawfully made. If the search was lawfully made, the Court is directed to deny the aggrieved person's motion except to the extent that due process requires discovery or disclosure. 50 U.S.C. §§ 1806(g), 1825(h). Plaintiff argues that any information collected concerning his activities was used improperly, and

MEMORANDUM DECISION AND ORDER - 6

the surveillance materials may be relevant to his claim that the arrest warrant was obtained improperly. It would appear that if the materials are necessary to prove Plaintiff's case, the Court could allow disclosure for the reason that "due process" may allow discovery if the materials are relevant to Plaintiff's case.

At this juncture, without the required affidavit, the Court can not decide the issue. *Al-Haramain Islamic Foundation v. Bush*, No. 07-109, slip op. at 14983 (9th Cir. Nov. 16, 2007) (explaining that FISA has a "detailed regime" for consideration of documents protected by its provisions). The Court therefore orders Federal Defendants to comply with the requirements of the FISA and submit the required affidavit. Upon review, the Court will determine whether *in camera* submission of the documents will be required.

The FISA does not cover other documents Plaintiff requested, and the Court will now discuss the remaining allegedly privileged documents.

**B.    Government and Executive Privileges.**

The law enforcement privilege, state secrets privilege, official files privilege, deliberative process privilege, and other general privileges asserted by the Federal Defendants protecting confidential information fall under the broad rubric of "executive privileges." These privileges have been treated the same by the various courts that have considered them. The Supreme Court decision *United States v. Reynolds*, 345 U.S. 1 (1953), is the benchmark for analyzing claims of government privilege. In that case, the government asserted that military and state secrets would be divulged if forced to comply with a motion to compel in a wrongful death action brought under the Federal Tort Claims Act. The Supreme Court explained that the state secrets privilege is "not to be lightly invoked. There must be formal claim of privilege, lodged by the head of the

MEMORANDUM DECISION AND ORDER - 7

department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8. Once a formal claim of privilege is lodged, the Court should consider whether a "reasonable possibility" exists that state secrets are involved, and balance that factor against the other party's showing of "compelling necessity." *Reynolds*, 345 U.S. at 11. However, even the most compelling necessity "cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Id.* And, if the evidence may be obtained from other sources, the privilege may not be invaded. *Id.*

When the very lawsuit is premised on an alleged agreement or other facts that must by their very nature remain secret, there is an absolute privilege. The Supreme Court explained in *Tenet v. Doe*, 544 U.S. 1, 9 (2005), that *Reynolds* does not supplant the holding in *Totten v. United States*, 92 U.S. 105 (1876), which held that lawsuits premised on alleged espionage agreements are forbidden. Thus, in a small number of cases that depend upon absolute secrecy, the privilege will never be overcome, no matter how important and necessary the information is for the successful prosecution of the action. *See Weinberger v. Catholic Action of Haw./Peace Educ. Project*, 454 U.S. 139, 146–47 (1981) (holding that whether or not the Navy complied with certain provisions of the National Environmental Policy Act of 1969 is beyond judicial scrutiny where "[d]ue to national security reasons," the Navy could "neither admit nor deny" the fact that was central to the suit, *i.e.*, "that it propose[d] to store nuclear weapons" at a facility).[2]

---

[2] The Freedom of Information Act also exempts from disclosure matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order. Executive Order No. 12065, 3 C.F.R. 190 (1978-1978 Comp.), confers upon specified officials the power to classify information if its release would pose a threat to national security." *Weinberger*, 454 U.S. at 144. Consequently, if the government can establish by affidavit the requisite security classification, such documents would be absolutely privileged despite any showing of need. *Weinberger*, 454 U.S. at 145.

MEMORANDUM DECISION AND ORDER - 8

Subsequent cases have developed a framework for the Court to follow based upon *Reynolds* when the government invokes claims of executive privilege.  First, the threshold showing of privilege must be made by an appropriate affidavit.  In *Kerr v. United States Dist. Court*, 511 F.2d 192, 198 (9th Cir. 1975), the Court of Appeals explained that governmental privileges are "qualified . . . contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken."  *Kerr*, 511 F.2d at 198.  The privilege must be formally asserted by a proper governmental official, which does not include a government lawyer, and state with specificity the rationale of the claimed privilege.  *Kerr*, 511 F.2d at 198.  It is appropriate for the court to allow disclosure until the proper showing has been made.  *Kerr*, 511 F.2d at 198, *aff'd*, 426 U.S. 394, 404 (1976) (explaining that it was entirely acceptable to order the production of documents in the absence of a formal assertion of the privilege by a person eligible to assert it, with specific reasons and explanations, before an in camera inspection would be required).

> To meet the threshold showing, an appropriate affidavit should include:
>
>> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Zackery v. Stockton Police Dep't.*, 2007 WL 1655634 *3 (E.D. Cal. June 7, 2007) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995)).  Absent an appropriate threshold

showing, an objection based upon unsupported claims of executive privilege should be overruled. *Zackery*, 2007 WL 1655634 at *3. *See also Breed v. United States District Court*, 542 F.2d 1114, 1115 (9th Cir. 1976) (compelling production of prison records subject to a protective order limiting disclosure because affidavits failed to meet the required showing).

Once affidavits establish a threshold showing of privilege, the Court is instructed to balance several factors. The most often relied upon decision for the appropriate balancing factors is *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), *overruled on other grounds*, *Startzell v. City of Philadelphia*, 2006 WL 2945226 (E.D. Pa. Oct. 13, 2006). The *Frankenhauser* case dealt with a request to disclose police reports. In applying *Reynolds*, the court articulated the following considerations:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser*, 59 F.R.D. at 344.

In *Frankenhauser*, the court allowed disclosure of the police files for several reasons. The police investigation occurred two years prior and no criminal charges had been brought

MEMORANDUM DECISION AND ORDER - 10

against anyone; no disciplinary actions had been instituted; no party seeking discovery was a potential defendant in any criminal case arising out of the incidents in question; and the plaintiffs demonstrated a need for the materials as applied to the allegations in their complaint.  Thus, the court allowed disclosure of the police report containing factual information, with the exception of those portions containing an evaluative summary.  *Frankenhauser*, 59 F.R.D. at 345.

*Elliott v .Webb*, 98 F.R.D. 293, 297 (D. Idaho 1983), relying upon *Frankenhauser*, articulated that the distinctions between completed versus ongoing investigations and factual versus self-evaluative material were the more important factors.  Material contained in ongoing investigations and self-evaluative reports should ordinarily remain confidential.  *Elliott*, 98 F.R.D. at 297.  In *Elliott*, the court held that psychological evaluations of two police officers were subject to the privilege, while the internal investigations of the officers for their conduct containing factual information were not.  *Id.*

In addition, materials subject to the deliberative process privilege, 5 U.S.C. § 552(b)(5), include documents reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001).  To qualify for the privilege, the documents must be exchanged between agencies or within agencies of the government.

With this legal background, the Court will now turn to the particular categories and documents at issue in this matter.

### 1. Documents Relating to Investigation of Al-Kidd.

Category 2 of the Federal Defendants' privilege log identifies 275 pages of documents relating to investigations of al-Kidd and withheld from production on the basis of law enforcement privilege. In addition, Exhibit 2 contains approximately 670 documents produced in redacted form from various government databases and other sources discussing Plaintiff and others. The codes explaining the basis for the redactions assert various law enforcement privileges, including the confidential nature of law enforcement techniques, confidential sources, investigative methods and information protected by general order. Addendum B, Docket No. 176.

The Federal Defendants submitted the affidavit of James McJunkin, Section Chief for the International Terrorism Division of the FBI for ex parte, *in camera* review by the Court. *See* Docket No. 191. Mr. McJunkin explains the basis for withholding the documents identified in category 2 of the privilege log, as well as the basis for the redactions in Exhibit 2. In addition, the Federal Defendants have filed other affidavits containing sealed information detailing the classified nature of the documents Plaintiff seeks in these two areas. The Court has carefully reviewed the declarations submitted, both publicly filed and those portions filed under seal and ex parte. The Court is satisfied that the basis for the privileges asserted are extremely well documented. In addition, the declarations establish that the subject matter, means, sources, and methods of intelligence gathering in the context of this case would undermine the government's intelligence capabilities and compromise national security. Accordingly, the Court concludes that the government's assertion of privilege outweighs Plaintiff's need for this material, and that

the Federal Defendants have sustained their burden as to the various law enforcement privileges asserted preventing disclosure.

    **2.    The OPR Report.**

Categories 12, 15, and 16 in the Federal Defendants' privilege log, as well as documents identified as US 1258–1265, Docket No. 177, relate to an Office of Professional Responsibility Report ("OPR") concerning the use of material witness warrants in other cases as well as in Plaintiff's case. Category 12 is described as four pages of notes regarding the use of material of material witness warrants and al-Kidd's detention. Category 15 is a ten page letter received by Mr. Jarrett in response to a request for information into the detention of al-Kidd. Category 16 is another six page letter received by Mr. Jarrett regarding al-Kidd's detention. The OPR report is produced in redacted form within Exhibit 2 disclosing information relating to Plaintiff.

Mr. H. Marshall Jarrett, the head of the Office of Professional Responsibility, submitted an affidavit discussing the confidential nature of OPR files. Decl. of Jarrett, Ex. D, Docket No. 188. He explained that OPR files are considered privileged because the OPR is charged with investigating sensitive allegations involving official misconduct, and that such documents are intended for internal use only. He determined that the OPR report contains confidential law enforcement information and information that relates to other persons that is protected by the grand jury privilege. Mr. Jarrett explained that it would be unduly burdensome to obtain the appropriate authorizations before the grand jury material may be released, and that it may be nearly impossible to do so without significant time and expense. He also contends that the letters relate to the report, and are confidential as well.

MEMORANDUM DECISION AND ORDER - 13

Upon review of Mr. Jarrett's declaration, the Court concludes that the Federal Defendants have adequately supported their claim of privilege. The OPR is charged with investigating highly sensitive allegations of official misconduct. To invade its confidential files may discourage persons from reporting such conduct in the future if they know that the material could be disclosed during a lawsuit. The OPR also serves an important watchdog function for the government, and should therefore continue to operate confidentially. Upon reviewing the information disclosed with respect to al-Kidd, it appears that the redacted information is similarly evaluative in nature, and not factual. Finally, the report was prepared in 2005, well after the restrictions imposed upon Plaintiff were lifted on June 16, 2004, and the redacted portions concerned others whose situations have no bearing upon whether the material witness statute was used improperly in this case. Accordingly, the Court concludes the material in these categories is properly withheld.

### 3. Requests for Production Withheld on Grounds of Law Enforcement Privilege.

In his discovery requests, Plaintiff has asked the Federal Defendants to produce documents from January 1, 2001 to the present reflecting or referencing information about Plaintiff contained in databases that track criminal or terrorist activity, which databases include the National Crime Information Center (NCIC), the Terrorist Screening Center (TSC), and the Treasury Enforcement Communication System (TECS). Req. for Production Nos. 19, 20, and 21, Ex. 1, Docket No. 176. Interrogatories 11 and 12 ask for information about whether Plaintiff was "ever" entered into any database managed for law enforcement purposes. Interrog. Nos. 11, 12, Ex. 1, Docket No. 176. The Federal Defendants objected on the grounds of relevance and law enforcement privilege.

In addition to the affidavits discussed above, Mr. Thomas Harrington, Deputy Assistant Director of Operational Support in the Counterterrorism Division of the FBI, submitted an affidavit specifically discussing the confidential nature of documents withheld in response to Request for Production Nos. 19, 20, and 21, as well as Interrogatory Nos. 11 and 12. Decl. of Harrington, Ex. G, ¶ 13, Docket No. 188. To the extent that other affidavits did not address these issues, he explained the origin of several divisions within the FBI charged with investigating terrorist threats and the purpose of the Terrorist Screening Database (TSDB), which is to maintain a centralized federal terrorist watch list. He stated that the questions seek information about Plaintiff which may or may not be in the TSDB, and that the files and records contain classified national security information.

In *Raz v. Mueller*, 389 F.Supp.2d 1057, 1062, (W.D. Ark. 2005), the court found a similar affidavit submitted by Mr. Harrington in that case to be sufficient to protect information sought from the TSDB, because terrorist groups could manipulate the system, or use the disclosed information to their advantage to avoid detection. The court concluded that even though the plaintiff's showing of need was great, the public interest in nondisclosure outweighed any showing of need, and denied plaintiff's motion to compel. *Raz*, 389 F.Supp.2d at 1063.

In this case, Mr. Harrington's affidavit considered in conjunction with the other affidavits, including the McJunkin declaration, provide sufficient support for protection of information within the various databases Plaintiff identified. Even assuming Plaintiff's need for the information, the affidavits establish that the public interest in this case weighs decidedly in favor of nondisclosure for security reasons. And, the Court doubts Plaintiff truly needs this information. His claims against the Federal Defendants concern events that occurred in 2003

and 2004, including the events that led up to the issuance of the material witness arrest warrant. To the extent Plaintiff requests information beyond the termination of his release conditions on June 16, 2004, such information is not relevant to his claims, as further discussed below.

**C.     Relevance.**

Plaintiff argues that Federal Defendants have withheld documents on the grounds that they are not relevant or responsive to Plaintiff's claims. Mem. at 13, Docket No. 139. There are two general topics in this area. First, Plaintiff seeks information relating to others detained as material witnesses from January 1, 2000, to the present. For example, Request for Production Nos. 5, 18, and 25 ask for information and statistics about others arrested under the material witness statute. Ex. 1, Docket No. 176.[3] Second, Plaintiff asks for all documents relating to any policies or procedures concerning the detention of material witnesses for the period of January 1, 2000 to the present. Req. for Produc. No. 5, Ex. 1, Docket No. 176. Plaintiff claims that information related to others subjected to the same treatment and under similar policies is relevant to Plaintiff's claim that the statute was used pretextually as a matter of course, and so may have been in his case.

The Federal Defendants argue that information relating to others detained under the material witness statute is not relevant to Plaintiff's claim that the statute was abused with respect to him individually. Mem. § I, Docket No. 188. Concerning any detention policies that may or may not exist, Federal Defendants base their objection on the grounds that no claims remain against the Federal Defendants concerning Plaintiff's detention. Defs.' Resp. to Req. for

---

[3] In other questions, Federal Defendants object on the grounds of relevance, but produce information subject to the objection.

MEMORANDUM DECISION AND ORDER - 16

Produc. No. 5, Ex. 1, Docket No. 176. Federal Defendants also argue that any information concerning these two issues subsequent to the removal of Plaintiff's travel restrictions on June 16, 2004, is irrelevant.

Rule 26(b)(1) allows parties to obtain discovery regarding any matter "relevant to the claim or defense of any party." Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In this case, relevant evidence should be viewed with an eye toward Plaintiff's claims. He contends that the Federal Defendants submitted a deficient affidavit in support of the arrest warrant because it included false information, and that Plaintiff's arrest and detention were unlawful because the government Federal Defendants used the material witness statute as a pretext to arrest and detain him absent probable cause. Both claims involve the Federal Defendants' knowledge and practices at the time of Plaintiff's arrest. He must prove that the government, in his case, arrested him pretextually and with faulty information. Thus, what happened to others around the country, or what occurred at times other than the time frame of Plaintiff's arrest and detention, is not relevant. The Court has denied similar "fishing expeditions" in the past. *See Watson v. Sandpoint Police Dept.*, Case No. CV 05-218-N-EJL, 2006 WL 2632574 *4–5 (D. Idaho Sept. 13, 2006) (denying discovery concerning the defendant's arrest record history because it did not relate to the plaintiff's claims against the specific officer); *Purkey v. Rubino*, Case No. CV 04-548-E-MHW, 2006 WL 3497267 *5 (D. Idaho Dec. 4, 2006) (explaining that in a wrongful discharge case, the employee was not permitted unfettered access into the circumstances surrounding other employee disciplinary matters because it was not relevant to his claim).

MEMORANDUM DECISION AND ORDER - 17

Therefore, to the extent that the Federal Defendants have not already done so, they must produce all non-privileged information concerning their knowledge about Plaintiff and any policies or procedures relevant to the use of the material witness statute up until the removal of Plaintiff's release conditions on June 16, 2004.  But Plaintiff is not entitled to information concerning others detained as material witnesses nor is Plaintiff entitled to information corresponding to periods beyond June 16, 2004, as such information is not relevant to Plaintiff's claims against the Federal Defendants.

Because of the sheer volume of material the parties asked the Court to review, and to the extent that the Court has not addressed particular discovery requests in detail, the Court directs the parties to engage in a face-to-face meeting to consider whether additional relevant materials that would fall outside of the privileges discussed herein may be released to Plaintiff.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)   Plaintiff's Motion to Compel (Docket No. 176) be GRANTED IN PART AND DENIED IN PART.  Federal Defendants are ordered to comply with the procedures in 50 U.S.C. §§ 1806 and 1825 to the extent applicable to documents withheld and identified in Federal Defendants' privilege log.  For all other documents withheld on the grounds of executive or law enforcement privileges, Plaintiff's motion is denied.  To the extent not already produced, and consistent with the Court's decision, Federal Defendants are ordered to produce all relevant non-privileged materials pertaining to Plaintiff and requested in Plaintiff's

discovery requests. Such evidence excludes any information about others and is limited in scope up to June 16, 2004.

2) Federal Defendants' Motion to Submit McJunkin Declaration in camera (Docket No. 191) be GRANTED, provided that the Court will keep a paper copy of the Declaration in a secure location with access restricted to the Judge.

DATED: December 10, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge