UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| ABDULLAH AL-KIDD, | ) | Case No. CV:05-093-S-EJL-MHW |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | MEMORANDUM ORDER |
|  | ) |  |
| ALBERTO GONZALES, Attorney | ) |  |
| General of the United States; *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

On February 13, 2008, Magistrate Judge Mikel H. Willams issued a Report
and Recommendation, recommending Defendant Ada County Sheriff Vaughn
Killeen's Motion for Summary Judgment be granted, that Plaintiff's Motion for
Summary Judgment be denied, the motion to compel discovery be denied, and that
all other counts against the Defendant Killeen be dismissed.   Plaintiff filed
objections to the report which this Court now takes up.

**Factual and Procedural Background**

Mr. Abdullah al-Kidd has asserted a claim against the former Ada County
Sheriff Vaughn Killeen ("Defendant Killeen") under the due process clause of the
Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[1]   The claim relates to the

_____

[1]

The First Amended Complaint ("FAC") here names Defendant Killeen and alleges he "had responsibility for
the conditions under which Mr. al-Kidd was confined at the Ada County Jail. While Sheriff, Defendant Killeen
was responsible for subjecting Mr. al-Kidd to punitive, unreasonable and excessively harsh conditions in
violation of the Constitution and federal statutes." (Dkt. No. 40, p. 11). The FAC alleges:

conditions of Mr. al-Kidd's confinement while being held at the Ada County Jail and is brought against Defendant Killeen in his individual capacity, rather than his official capacity.[2]  At issue are the policies of the Ada County Jail ("Jail Policies") for housing and classification of inmates and the application of those policies to Mr. al-Kidd's detention.

On March 25, 2003, the United States Marshal's Service brought Mr. al-Kidd to the Ada County Jail to be held as an uncharged material witness; he was later released on March 31, 2003.[3]  Mr. al-Kidd was placed in a private cell within

> 96.    Defendant Killeen, while Sheriff, and acting under color of law, had ultimate legal responsibility and oversight for the unlawful, excessive, and punitive manner in which Mr. al-Kidd was held in his facility.
>
> 97.    Defendant Killeen, while Sheriff, knew or should have reasonably known that Mr. al-Kidd was being subjected to unlawful, excessive, and punitive detention conditions.
>
> 98.    Defendant Killeen, while Sheriff, acted intentionally, knowingly, with reckless disregard and/or deliberate indifference to the constitutional and legal rights of Mr. al-Kidd to be free from unlawful, excessive, and punitive detention conditions.
>
> 99.    There was no legitimate reason for the excessive and punitive conditions under which Mr. al-Kidd was detained.  Defendant Killeen, without undue burden, could have detained Mr. al-Kidd under less restrictive conditions.

(Dkt. No. 40, p. 25).  Count Four, Unlawful Arrest and detention, pursuant to 42 U.S.C. § 1983 alleges the "Defendants' actions violated Mr. al-Kidd's constitutional and legal rights to be free from unlawful arrest and post-release conditions, and punitive and unconstitutional conditions of confinement and detention in violation of 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution" as to all non-federal Defendants acting under color of law.  (Dkt. No. 40, p. 41).

[2]  Plaintiff's counsel conceded at the hearing that Counts 1, 2, and 3 were not brought against Defendant Killeen but only as to the other named Federal Defendants.

[3]

The United States Marshal's Service contracts with the Ada County Sheriff's Department to house federal prisoners and detainees while awaiting court proceedings.  The agreement between the two agencies specifies that all federal inmates must be held at a level "appropriate for prisoners considered a risk of flight, a danger to the community, or wanted by other jurisdictions."  The Ada County Jail had a policy requiring inmates brought by the Marshal's Service to be assigned a custody level no lower than a level 4.  In addition, the

the closed custody unit ("CCU") and initially given a level 2 custody classification. A level 2 classification is used for high risk inmates and requires that they be placed in yellow coveralls, shackled, escorted by two officers for all movements, and have only limited recreation. Four days later, Deputy Timothy Kinch performed a primary classification analysis of Mr. al-Kidd which placed him at a level 4 custody level; which is a lower classification not requiring the objectionable shackling or other restrictions. Deputy Kinch overrode the level 4 placement and retained Mr. al-Kidd's level 2 assignment due to his status as a high profile witness and for the purpose of providing additional safety to Mr. al-Kidd.[4] As a result, Mr. al-Kidd remained subject to the restrictions of a level 2 inmate. The primary source of contention regarding the conditions of confinement is the shackling of Mr. al-Kidd during his six days in custody at the Ada County Jail.[5]

Both Mr. al-Kidd and Defendant Killeen filed motions for summary judgment. Following a hearing on the motions, the Magistrate Judge concluded that Mr. al-Kidd had not established as a matter of law that Defendant Killeen may

---

Marshal's Service instructed that Mr. al-Kidd be kept separate from other inmates for his own protection.

[4] As an alternative, Deputy Kinch could have kept the level 4 custody classification and place special instructions in his file that would inform Jail personnel of any additional protections applicable to Mr. al-Kidd. Deputy Kinch testified during his deposition that he did not pursue this option because he was concerned the Jail staff may not read the special instructions thereby compromise the increased protection concerns of Mr. al-Kidd.

[5]

Mr. al-Kidd also challenges the conditions of his confinement in terms of having no privacy due to a security camera and large windows in his cell, being locked in his cell for most of the hours of the day, lighting that made sleep difficult, cold temperatures, and ants in his cell. The report and recommendation properly addresses these issues and this Court is in agreement with and hereby adopts the Magistrate Judge's reasoning.

MEMORANDUM ORDER - 3
08/ORDERS/AL-KIDD_MSJ

be held individually liable in his supervisory capacity Mr. al-Kidd's alleged constitutional violations. (Dkt. No. 230). The Magistrate Judge issued his Report and Recommendation advising this Court to deny Mr. al-Kidd's motion for summary judgment and grant Defendant Killeen's motion for summary judgment.

Any party may challenge a Magistrate Judge's proposed recommendation regarding a dispositive motion by filing written objections within ten days after being served with a copy of the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate. Id.; see also Fed. R. Civ. P. 72(b). Mr. al-Kidd filed objections arguing that the report and recommendation improperly concluded that Defendant Killeen was not liable for the alleged violation of Mr. al-Kidd's constitutional rights. Defendant Killeen disputes the objections.

## Discussion

The Magistrate Judge correctly stated the standard for a motion for summary judgment and the law for supervisor liability.[6] A supervisor must cause the deprivation of constitutional rights in order to be held liable. Supervisors

---

[6] Because the summary judgment standard is well established, the Court will not restate it here but expressly incorporates the standard as stated by the Magistrate Judge. (Dkt. No. 230, pp. 12-13).

MEMORANDUM ORDER - 4
08/ORDERS/AL-KIDD_MSJ

cannot be held vicariously liable for the actions of his or her employee or subordinate.[7]   Thus, liability is dependent upon the supervisor's "(1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations omitted); see also Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007); Baker, et al. v. Putnal, et al., 75 F.3d 190, 200 (5th Cir. 1996) (Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation or (2) implement unconstitutional policies that causally result in plaintiff's injury).   Because the parties here do not dispute that Defendant Killeen had no personal involvement in the alleged constitutional deprivation, the question before this Court is whether there exists a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman, *supra*.

Mr. al-Kidd's objections allege two causal connections between Defendant Killeen and the Jail Policies, which Defendant Killeen was responsible for in his

---

[7] This Court also agrees with the Report and Recommendation's conclusion that the conditions of confinement for a material witness not charged with a crime is that the person "cannot be treated more harshly than a pretrial detainee, and should be afforded at least the protections of a civilly committed individual." (Dkt. No. 230, p. 19).  Thus, the conditions of confinement cannot amount to punishment, be excessive in relation to the purpose of the individual's commitment, or be "employed to achieve objective that could be accomplished in so many alternative and less harsh conditions."  Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004); see also Bell v. Wolfish, 441 U.S. 520, 538 (1979).  Such decisions by institution professionals are entitled to an appropriate amount of deference.  See Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

position as Sheriff, that resulted in the objectional confinement conditions.  First, Defendant Killeen should have instituted Jail Policies addressing the situation of housing uncharged material witnesses.  Second, the Jail Policies that did exist forced the Jail staff to act in a manner that violated Mr. al-Kidd's constitutional rights and/or the Jail staff's unconstitutional treatment of Mr. al-Kidd was caused by the lack of guidance and training of the Jail Policies.

Defendant Killeen opposes the objections arguing the Report and Recommendation properly concluded that there has been no causation shown between the Defendant Killeen and the alleged constitutional violations arguing he cannot be held liable for the subjective decisions of Jail staff resulting in constitutional violations absent personal involvement.  In particular, that the alleged violations resulted from Deputy Kinch's discretionary decision and not any actions or failures to act on the part of Defendant Killeen.

**Analysis**

I.   <u>Defendant Killeen's Failure to Institute Jail Policies and/or to Prohibit Unconstitutional Conduct</u>

In March of 2003, other than being housed separately from other inmates, there was no specific policy for housing material witness at the Jail who were not charged with a crime.  Thus, such individuals were subject to the same classification policies as other inmates.  (Dkt. No. 147, Ex. 26, Killeen Depo.).  Mr. al-Kidd argues that Defendant Killeen's failure to enact a policy for housing

MEMORANDUM ORDER - 6

material witnesses renders him liable under § 1983.  Defendant Killeen argues the lack of a policy for housing an uncharged material witness is not, in and of itself, a constitutional violation.

The Magistrate Judge properly considered and rejected Mr. al-Kidd's argument that the lack of a specific Jail Policy for handling uncharged material witnesses or prohibiting  unconstitutional actions by Jail staff is sufficient to state a claim against Defendant Killeen.  (Dkt. No. 230, p. 31 n. 8).  Though it is true that causation as to a supervisor is possible where the supervisor knew of constitutional violations by his subordinates and failed to act to prevent them, that is not this case.   See Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000) ("Supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."); Larez v. City of Los Angeles, 946 F.3d 630, 646 (9th Cir. 1991)(determining that one could be found liable "in his individual capacity if he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.") (quotations omitted).  Here, Defendant Killeen did not know of the alleged violations to Mr. al-Kidd and, therefore, any argument that he failed to act to prevent them does not lie.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

MEMORANDUM ORDER - 7
08/ORDERS/AL-KIDD_MSJ

1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

Furthermore, Defendant Killeen is not liable because failed to anticipate and adopt a policy for housing uncharged material witnesses.  At the hearing, Plaintiff's counsel argued that, given the Jail's history of housing protective custody inmates and the Jail's agreement with the Marshal's Service, the Defendant Killeen should have anticipated this situation and instituted a Jail Policy for housing material witnesses or a policy prohibiting unconstitutional conduct. That failure to implement such a policy, he argues, resulted in the violations of Mr. al-Kidd's constitutional rights.  The Court disagrees.  Imposing liability on an individual solely for failure to institute a specific policy in anticipation of a circumstance does not allege the requisite culpable conduct linking an individual to the alleged constitutional violations.  See Hydrick, 500 F.3d at 988; Redman, 942 F.2d at 1446; City of Canton, 489 U.S. at 385.   Though it was not unforeseeable that the Ada County Jail would be called upon to house a material witness, given the Jail's agreement with the Marshal's Service, the fact remains that the situation had never happened before.  More importantly, the Jail's Policies that were in place were sufficient to address the situation.  (Dkt. No. 230, p. 31).

The parties agree that the Jail staff acted within the Jail policies and those policies provided constitutional options for protecting such inmates.  (Dkt. No.

MEMORANDUM ORDER - 8

230, p. 25).  The fact that a specific protective custody inmate policy could have been instituted does not mean the lack of a specific policy caused the alleged constitutional violations.   The issue raised by Mr. al-Kidd goes more to the question of whether or not the policies in place were so improperly applied by the Jail staff that Defendant Killeen can be held liable for failing to prevent the unconstitutional actions by providing training and/or guidance to the Jail staff.  It is the application of those policies that make up the basis for Mr. al-Kidd's claim.  Accordingly, the Court finds Defendant Killeen is not liable under § 1983 for failure to enact a specific Jail Policy for material witnesses or prohibiting constitutional actions.

II.      Jail Policies Forced Jail Staff to Act Unconstitutionally

One of Mr. al-Kidd's principal arguments is that the Jail policies left Deputy Kinch with no choice but to place Plaintiff at a level 2 in order to achieve the desired protection level, which required the shackling and other actions which allegedly violated his constitutional rights.[8]  (Dkt. No. 242).  He argues that Defendant Killeen is liable for implementing deficient policies that constrained Deputy Kinch's decision to either assigning a lower custody classification

_____

[8]   This argument seems to be directly at odds with the argument raised by counsel at the hearing before the Magistrate Judge that challenged the Jail Policies because they provided Deputy Kinch with the discretion to override the classification. Now it seems Mr. al-Kidd argues the lack of discretion, aka the rigidity of the Jail Policies, caused the constitutional violations thus making Defendant Killeen liable.  The Court considers the claim that the Jail Policies provided too much discretion, or the failure to properly train, in the next section of this Order.

MEMORANDUM ORDER - 9
08/ORDERS/AL-KIDD_MSJ

resulting in less protection to Mr. al-Kidd or assigning the level 2 classification which required shackling Mr. al-Kidd.  Thus, he argues, Deputy Kinch had "no choice" but to assign the level 2 classification and shackle Mr. al-Kidd in order to protect him.  Mr. al-Kidd points to Deputy Kinch's deposition testimony arguing that although they had no justification for shackling Mr. al-Kidd, they were required to do so because of the Jail policies.  (Dkt. No. 237, Ex. A, Kinch Depo., p. 125) (Deputy Kinch testified that he "felt" his only option was to place him at a level 2 in order to provide the additional protection to Mr. al-Kidd.).

The argument that Defendant Killeen is liable because the Jail policies were so constraining that it forced Deputy Kinch to violate Mr. al-Kidd's rights fails. Mr. al-Kidd couches Deputy Kinch's testimony to state that he had no choice but to keep him classified at a level 2 which required that he be placed in a yellow jumpsuit and subject to the shackling requirements.  This characterization, however, is accurate only when viewing Deputy Kinch's later deposition testimony in isolation.[9]  Earlier in the deposition, Deputy Kinch testified that under

---

[9]     During his deposition, (Dkt. No. 237, Ex. A, Kinch Depo., p. 125), Deputy Kinch testified that:

> Q:     But it is correct that a protective custody inmate could get
>        the extra protection without having he yellow uniform?
> A:     It's possible.
> ...
> Q:     Through the special instructions could you direct that a
>        protective custody inmate be escorted by two people
>        instead of one?

MEMORANDUM ORDER - 10
08/ORDERS/AL-KIDD_MSJ

A:      You probably could.  The problem is that's not the policy, that's not the practice.  You know, they know what the policies and practices are for high security level one and two inmates.  For me as a line staff to put a special instruction in that this inmate, this protective custody inmate, needs a two-officer escort would be very unusual and probably not very effective

Q:      Why not effective?

A:      Well, normally the staff is tuned in to high security inmates requiring a two-officer move and the rest of the population in that close custody unit would only require one, so what you would be doing is asking the whole staff at the jail to do something that is out of the ordinary.

Q:      So under the policies and practices that were in place in March 2003, was your only option to provide added protection for a protective custody inmate to assign that person to a level one or two?

A:      I felt that it was, yes.  I don't know what else I actually would have done to give that inmate any more protection or safety.

Q:      And did you receive guidance, training for those kinds of situations?

A:      Well, we were always allowed to do overrides if we felt the situation and the circumstances dictated it.

Q:      And there was no limit on when and how you could do the overrides; right?

A:      No

Q:      So if the officer sees the inmate in yellow, is there a way to distinguish between the dangerous inmates and the at-risk inmates?

...

A:      Not without the special instruction there wouldn't be, no, that's why that's in place.

Q:      And is there a difference in how the jail treats dangerous

the Jail Policy he had the option to leave Mr. al-Kidd at a level 4, which would not have required shackling, and placed special instructions in his file to address the increased safety issues.[10]   Deputy Kinch decided not to pursue that option and instead assigned him to level 2 because he believed the level 2 custody classification was a more effective means for providing protection to Mr. al-Kidd.

---

|      | versus at-risk inmates?                                                                                                                                              |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| A:   | Well, they would be managed the same.                                                                                                                              |
| ...  |                                                                                                                                                                   |
| Q:   | So under the policies, procedures and practices that were in place in March 2003, if you had a protective custody inmate who you determined or you thought required some added measure of protection, was your only option to classify that person a level one or two? |
| A:   | That's the only option that I would be aware of.                                                                                                                  |
| ...  |                                                                                                                                                                   |
| Q:   | And there was no policy or procedure in place to eliminate shackling for such persons?                                                                             |
| A:   | No, there wasn't any exception for that, no.                                                                                                                      |
| Q:   | And there was no policy or procedure or practice in place to otherwise lessen the restrictions on that person while they were confined?                            |
| A:   | No.                                                                                                                                                               |
| Q:   | And that was the case regardless of why the person was being classified a level one or two?                                                                        |
| A:   | Right.                                                                                                                                                             |
| Q:   | And regardless of the reason why the person was detained?                                                                                                          |
| A:   | Right.                                                                                                                                                             |

   [10]  Once classified as level 2 and placed in yellow, Jail Policies did not allow for the Jail staff to not shackled Mr. al-Kidd regardless of whether the individual had been charged with a crime or not.  (Dkt. No. 237, Ex. A, Kinch Depo.).

MEMORANDUM ORDER - 12

Deputy Kinch's choice was made based on the "normal information" applicable to making such a determination, stating he considered whether "his life may be threatened by other inmates, just an additional degree of safety for that person." (Dkt. No. 237, Ex. A Kinch Depo., p. 124).

The testimony relied upon by Mr. al-Kidd indicates that ultimately Deputy Kinch felt the best option was to place Mr. al-Kidd at a custody classification level 2 which required that he be shackled.  The fact that Deputy Kinch chose not to pursue the alternative option does not mean it was not available to him.  See (Dkt. No. 147-25, Killeen Depo., pp. 51-56, 158-63).  Based on the evidence provided by Mr. al-Kidd, Deputy Kinch made a judgment call between the alternatives available under the Jail Policy.  Even if true, the facts alleged to support Mr. al-Kidd's argument that the Jail Policies were so constraining that Deputy Kinch was forced to assigning Mr. al-Kidd to level 2 resulting in the objectionable shackling procedures do not prove a causal link upon which to hold Defendant Killeen liable. See Redman, 942 F.2d at 1446 (supervisor liability is dependent upon the supervisor's "(1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").  Deputy Kinch's override of the classification level was a discretionary decision which brings the Court to Mr. al-Kidd's objection to the Report and Recommendation challenging whether Deputy Kinch's actions leading to the constitutional violations were caused by the Defendant Killeen's failure to

MEMORANDUM ORDER - 13

institute Jail policies preventing unconstitutional actions in this circumstance and/or providing guidance and training to Jail staff.

III.   <u>Defendant Killeen's Failure to Train and/or Provide Guidance to Jail Staff</u>

Mr. al-Kidd's next objection asserts that Defendant Killeen is individually liable because the unconstitutional treatment of Mr. al-Kidd was a result of the lack of training and/or direction to guide the Jail staff in detaining an uncharged material witness in a constitutional manner, or a policy preventing unconstitutional conduct.[11]  (Dkt. No. 237, p. 16) (Defendant Killeen "offered little or no guidance to subordinates on how to exercise this discretion with respect to uncharged detainees, either through policy, training or direct supervision.").  Because the Jail staff, including Deputy Kinch, acted within the Jail policies, Mr. al-Kidd argues the Jail Policies allowed for the unconstitutional actions (i.e. shackling) and, therefore, Defendant Killeen is liable for not prohibiting the unconstitutional conduct.

Defendant Killeen maintains the Report and Recommendation properly concluded that there is no causal connection between he and the alleged constitutional violations because Deputy Kinch's subjective decision to override the level 4 classification was the cause of the alleged injuries, not any actions by

---

[11]

This appears to be either an alternative argument or a contradictory argument to the prior objection which contends the policies in place forced Deputy Kinch to act in a way that violated Mr. al-Kidd's constitutional rights; arguing the alleged constitutional violations were caused first by the policies in place and second by the lack of policies/guidance/training.  The argument now is not that the Jail Policy required the unconstitutional conduct, as previously argued, but that they allowed the unconstitutional conduct.

Defendant Killeen.  Mr. al-Kidd counters that the lack of a Jail Policy and/or proper training prohibiting unconstitutional conduct caused Deputy Kinch to make the decision to act in an unconstitutional manner and, therefore, Defendant Killeen is liable because he should have had a policy or better training to prevent the action.      "A supervisor cannot be held personally liable under § 1983 for the constitutional deprivations caused by his subordinates, absent his participation or direction in the deprivation."  Ybarra v. Reno Thunderbird Mobile Home Village, et al., 723 F.2d 675, 680 (9th Cir. 1984) (citation omitted).  In Ybarra the Ninth Circuit recognized that other courts had found a § 1983 cause of action to lie where it was alleged that the supervisor's failure to train or supervise personnel led to the deprivation of constitutional rights or that a policy led to such deprivation.  Id. (citing McClelland v. Facteau, 610 F.2d 693, 696 (10th Cir. 1979) and Wanger v. Bonner, 621 F.2d 675, 679-81 (5th Cir. 1980)).  Ultimately the court in Ybarra concluded the claimant failed to establish a colorable claim of deliberate misconduct because the evidence was insufficient to show that the supervisor either inadequately trained or failed to supervise the employee properly; that the supervisor knew or should have known of the alleged misconduct and failed to act; and that there was no evidence that there was a custom or policy that violated the constitution.  Id. at 681.

In order for Mr. al-Kidd to bring a claim under § 1983 against Defendant Killeen as an individual for failure to train, he must allege that the failure to train

MEMORANDUM ORDER - 15

employees amounts to a policy or practice of failing to provide adequate training such that the policy or practice of failing to provide training amounts to deliberate indifference.  See Canton, 489 U.S. at 392.  Thus, Defendant Killeen will be held liable under § 1983 only if Mr. al-Kidd shows that "(1) [Defendant Killeen] failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." Baker, et al. v. Putnal, et al., 75 F.3d 190, 200 (5th Cir. 1996) ("For a police chief to be held liable under § 1983 there must be some connection between the chief's action and the alleged constitutional violation.").

Here, Mr. al-Kidd relies upon his expert, Walter Kautzky, to argue that failing to provide the necessary training or policy guidance establishes the necessary causal link between the alleged injury and Defendant Killeen.  Mr. Kautzky concluded that the constitutional violations allegedly committed by the Jail staff against Mr. al-Kidd are a result of the lack of clear policy guidance and training.  Mr. Kautzky opines that had Defendant Killeen "required jail staff to provide less restrictive conditions of confinement for material witnesses by policy, Abdullah al-Kidd would not have been restrained in belly chains and leg restraints or placed in conditions of confinement appropriate only for violent escape prone felons."  (Dkt. No. 115, p. 11).  Mr. Kauzky notes that because the Jail's agreement with the Marshal's Service anticipated housing material witness and

MEMORANDUM ORDER - 16

because lesser housing and security options are available to address the protection concerns, a policy should be in place for these situations.

The report and recommendation considered the failure to train in its discussion of causation as to Defendant Killeen.[12]  (Dkt. No. 230, p. 23).  The Magistrate Judge stated that "[t]o find causation, there must be a showing that a valid policy is unconstitutionally applied by an employee as a result of a failure to adequately train the employee, and that the failure to train caused the constitutional deprivation." (Dkt. No. 230, p. 23).  Citing to City of Canton, Ohio v. Harris, the Magistrate Judge stated that Mr. al-Kidd "has not alleged or demonstrated any lack of training or a pattern of applying maximum security overrides to non-criminal detainees who would otherwise be classified at a lower custody level.  489 U.S. 378 (1989).  Further, there is no evidence that Kinch or Savage were inadequately trained to apply the classification criteria or exercise discretionary overrides. Instead, the evidence shows that al-Kidd's classification override was an isolated incident, peculiar to the situation at hand, and not the result of a lack of training as to how to apply the override policy."  (Dkt. No. 230, p. 30).

_____

[12]  At first glance it does not appear the failure to train the Jail staff was previously raised before the Magistrate Judge.  Having conducted a review of the record, including the hearing before the Magistrate Judge, the Court concludes that Mr. al-Kidd raised the issue of Defendant Killeen failing to institute a policy or provide guidance to Jail staff when dealing with an uncharged material witness.  In particular, at the hearing, Plaintiff's counsel argued Defendant Killeen is individually liable because there was no policy or direction in place to address this situation or that prohibited unconstitutional treatment of an uncharged material witness.

MEMORANDUM ORDER - 17

This Court agrees with the Magistrate Judge's recommendations. The argument that guidance, training, and/or a policy should have been in place to prevent unconstitutional conduct is not supported by the facts as alleged by Mr. al-Kidd. There is no causal connection between any actions or conduct by Defendant Killeen that resulted in the alleged constitutional violations. As noted above, the Jail Policies provided constitutional means for housing Mr. al-Kidd and the parties agree that the Jail staff followed the policies.[13] Deputy Kinch testified that he had been trained and was aware of the policies and guidelines for classifying inmates including the Jail Policies applicable to housing a material witness. (Dkt. No. 237, Ex. A., Kinch Depo., p. 125). The decision to override the level 4 classification and keep Mr. al-Kidd's classification at level 2 was Deputy Kinch's discretionary decision. Mr. al-Kidd's claim against Defendant Killeen, therefore, rests on Deputy Kinch's discretionary decision in applying the Jail Policies which, Mr. al-Kidd argues, resulted in violations of his constitutional rights. Mr. al-Kidd asserts that his claim challenges the "unfettered" discretion afforded to the Jail staff and the lack of training to avoid unconstitutional conduct. Mr. al-Kidd concedes that while some discretion is generally necessary, unfettered discretion led to the complained of actions in this case because there were no guidelines and/or policies preventing Jail staff from unconstitutional actions. Mr. Kautzky, Plaintiff's expert,

---

[13] Mr. al-Kidd has conceded that the level 4 classification would have been okay. (Dkt. No. 230, p. 25).

MEMORANDUM ORDER - 18
08/ORDERS/AL-KIDD_MSJ

opined that "The policy should have prohibited guards from exercising their discretion to shackle a witness who, like plaintiff, had *not* attacked a guard and who concededly posed *no* risk of harm or escape.  Here, however, defendant not only provided unfettered discretion to the guards, but also failed to sufficiently train and supervise them."  (Dkt. No. 237, pp. 17-18).  Mr. Kautzky further concluded that Jail staff should not be allowed the discretion to shackle a non-violent material witness because it is unconstitutional and that Defendant Killeen's failure to properly train Jail staff to not do so establishes his liability.  At a minimum, Mr. al-Kidd argues, a jury could find the lack of policy guidance and training caused his constitutional injuries and, therefore, a question of fact exists that precludes summary judgment.  The Court disagrees.

Magistrate Judge Williams properly addressed the issue of Defendant Killeen's liability for Deputy Kinch's exercise of discretion concluding that Defendant Killeen cannot be held liable where an employee applied a discretionary policy contained in a constitutional policy in an unconstitutional manner.  (Dkt. No. 230, p. 30).  Deputy Kinch testified that the reason for overriding the level 4 assignment was that Mr. al-Kidd was a "high profile" witness who required protective custody and that the best way to provide that protection was to assign him as a level 2 custody inmate; not any lack of training.  As determined above, no specific policy was required and Defendant Killeen is not liable for Deputy Kinch's exercise of discretion in applying the Jail Policies.  As Mr. al-Kidd notes

MEMORANDUM ORDER - 19

in his reply, in order for a lack of training to serve as a basis for liability, the failure must reflect a deliberate or conscious choice.  (Dkt. No. 242, p. 7 n. 3).  The facts and evidence presented by Mr. al-Kidd, including Mr. Kautzky's opinion, do not give rise to any deliberate or conscious choice by Defendant Killeen leading to the alleged deprivation of constitutional rights.    See Ybarra, 723 F.2d at 680-81 (acknowledging that a violation alone is insufficient to raise an issue of fact).

In hindsight it is easy to conclude that the Jail should have anticipated the possibility of a situation as was presented by Mr. al-Kidd's detention.  A review of the record, however, reveals that this particular situation is a rare occurrence at the Ada County Jail.[14]  Moreover, the Jail's policies and training provided Deputy Kinch with alternative methods for providing the protection necessary for Mr. al-Kidd.  Deputy Kinch used his discretion in choosing to override the level 4 classification and classify Mr. al-Kidd at level 2.  The facts alleged do not give rise to any causal link between Defendant Killeen and the alleged constitutional violations.  The exercise of discretion in an allegedly unconstitutional manner by Deputy Kinch does not, without more, extend liability to Defendant Killeen. Whether Deputy Kinch's decision ultimately violated Mr. al-Kidd's rights is not before this Court as Deputy Kinch has not been named in this case.

---

[14]  At the hearing, Plaintiff's counsel argued that Deputy Killeen should have anticipated having to house an uncharged material witness given the agreement between the Jail and the Marshal's Service in addition to the prior instances where the Jail had housed protective custody inmates who needed protection for their own good but were not a danger to others or to escape.

## ORDER

Having conducted a *de novo* review of the objected to portions of the Report and Recommendation the Court finds the Magistrate Judge's conclusions are consistent with this Court's own view of the evidence and the record.  Further, the Magistrate Judge identified the correct legal standards and properly applied those standards to the record.

Based on the foregoing and being fully advised in the premises, IT IS HEREBY ORDERED that the Report and Recommendation entered on February 13, 2008, (Dkt. No. 230), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED IN ITS ENTIRETY**.

IT IS FURTHER ORDERED as follows:

1) The Defendant's Motion for Summary Judgment (Dkt. No. 149), is **GRANTED**.

2) The Plaintiff's Motion for Summary Judgment (Dkt. No. 146) is **DENIED**.

3) Pursuant to the Plaintiff's statements at the hearing, Counts 1, 2, and 3 are dismissed.   All the Counts against Defendant Killeen are **DISMISSED**.

4) Plaintiff's Motion to Compel Discovery (Dkt. No. 139) is **MOOT**.

5)      A Judgment shall be entered in favor of Defendant Killeen on all

counts.


DATED:  **July 17, 2008**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 22
08/ORDERS/AL-KIDD_MSJ