UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABDULLAH AL-KIDD,            )<br>                                              )<br>           Plaintiff,                      )<br>                                              )<br>v.                                            )<br>                                              )<br>                                              )<br>ALBERTO GONZALES, *et al.*,  )<br>                                              )<br>           Defendants.                 )<br>_____) | Case No. CV 05-093-EJL-MHW<br><br>SUPPLEMENTAL MEMORANDUM<br>DECISION AND ORDER RE:<br>PLAINTIFF'S MOTION TO COMPEL<br>(DOCKET NO. 176) |

On October 24, 2007, Plaintiff Abdullah al-Kidd ("al-Kidd") filed a motion to compel (Docket No. 176) to obtain documents from the United States, FBI Agent Scott Mace, and FBI Agent Michael Gneckow (the "Federal Defendants"). Specifically, Plaintiff wanted (1) immediate production of documents withheld or redacted and described in Exhibits 1 and 2 to Plaintiff's motion; and (2) for all other documents withheld, an affidavit from the appropriate agency explaining the basis for the privilege asserted. Mem. at 7, Docket No. 176. As part of his request, al-Kidd sought documents relating to a foreign intelligence investigation of Sami Omar al-Hussayen, which Federal Defendants identified in category 1 of Federal Defendants' privilege log. Mem. at 1 n.2, Docket No. 187. Federal Defendants objected to production of these documents ("the FISA Documents") under the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1806 and 1825 ("FISA"), as well as under various privileges.

The Court heard oral argument concerning al-Kidd's motion on November 14, 2007, and

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 1**

issued a written Memorandum Decision and Order on December 10, 2007, granting in part and denying in part al-Kidd's motion. Docket No. 201. In its Order, the Court granted the Federal Defendants additional time to comply with FISA and to submit both an affidavit from the Attorney General as well as the FISA Documents for *ex parte*, *in camera* review. Mem. at 7, Docket No. 201. The parties subsequently agreed upon a protective order governing the production of these documents to the Court for its review. *See* Docket Nos. 212, 214, and 216.

The designated officer received the FISA documents which, pursuant to the protective order, were considered timely submitted as of January 14, 2008. Docket No. 252. However, an appropriate secure storage facility and security procedures were not established at the Court to receive and review the documents until July 31, 2008. Docket No. 252. The parties submitted additional briefing on the issues concerning FISA, (Docket Nos. 217, 243), and the Court has now completed its *in camera* review of the FISA documents.

After careful consideration of the parties' arguments, the Court will deny al-Kidd's motion to compel production of the FISA Documents, both because due process does not require their disclosure, and even if it did, the documents are protected by privilege.

## I.
## Background

The facts and procedural background are fully explained in the Court's two prior memorandum decisions (Docket Nos. 78, 79), and will be briefly summarized. As part of an anti-terrorism investigation, Mr. al-Kidd was detained as a material witness in a criminal case against Sami Omar Al-Hussayen. FBI Agent Gneckow and other law enforcement agents investigated the information for the material witness warrant, while FBI Agent Mace executed the affidavit in support of the warrant. Based upon the affidavit, the application was approved

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 2**

and a material witness arrest warrant issued for Mr. al-Kidd on March 14, 2003. Mr. al-Kidd was arrested on March 16, 2003, and remained in custody in Virginia. He was then was transferred to Oklahoma and eventually to Idaho, where he was finally released from custody on March 31, 2003. His release was conditioned upon surrender of his passport, restriction of travel and mandatory reporting to a probation officer. Ultimately, the government never called Mr. al-Kidd to testify in the Al-Hussayen trial and his release conditions were removed on June 16, 2004.

As a result of the government's actions, Mr. al-Kidd filed a complaint under the Federal Tort Claims Act alleging various constitutional and statutory claims against the Federal Defendants, as well as against other state and federal law enforcement officials. The claims against the Federal Defendants are: (1) the affidavit FBI agents Gneckow and Mace submitted to the Court in support of the government's request for an arrest warrant under the material witness statute was deficient because it included false information; and (2) his arrest and detention were unlawful because the Federal Defendants did not genuinely view him as a witness, but rather as a terrorism suspect. Mem. at 3, Docket No. 176. Al-Kidd believes that the Federal Defendants were using the material witness statute as a pretext to arrest and detain him because they did not have probable cause to arrest him on criminal charges. Mem. at 4, Docket No. 176. In the decision denying the Federal Defendants' motion to dismiss, Judge Lodge stated that "[t]hese allegations, if true, are sufficient to state a claim for abuse of process" under the Federal Tort Claims Act. Order at 16, Docket No. 78.

## II.
## Arguments of the Parties

In his motion to compel production of the FISA Documents, al-Kidd alleges that he is

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 3**

entitled to discover these documents, even if they do not specifically refer to or involve al-Kidd. He is willing to receive the information under a protective order if necessary. He argues that the FISA Documents are relevant to his claims, but other than his broad assertion of relevancy, he never specifies how the information would be relevant. He argues that relevant evidence must be disclosed to provide for appropriate "due process" under 50 U.S.C. § 1806(g).

Al-Kidd does not deny that he has received all documents, records, communications, and other forms of information related to the foreign intelligence investigation of al-Hussayen that refer to, mention, relate to, or involve al-Kidd. Mem. at 3, Docket No. 242. Federal Defendants confirm that they declassified any intercepted communications of al-Kidd that were obtained during the intelligence investigation of al-Hussayen and turned them over to al-Kidd during discovery. Mem. at 2, Docket No. 217.

The remainder of the FISA documents pertaining to the investigation of al-Hussayen were withheld on the grounds that the information is protected from disclosure based upon the FISA, the state secrets privilege, the law enforcement privilege, and the official files privilege. Addendum A, Docket No. 176-3. Federal Defendants also note that al-Kidd has already received all communications relating to al-Kidd that were intercepted pursuant to the FISA surveillance of al-Hussayen, and argue any other incidental information is irrelevant. In their brief, the Federal Defendants contend that the Court is limited to deciding whether the FISA collection at issue was lawfully authorized and conducted, and if it was, it must deny the motion unless due process requires disclosure. They contend that due process in this case does not warrant disclosure under any circumstances, even under a protective order, because no one would possess the requisite security clearance to review the documents even if an order could be crafted. Mem. at 16,

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 4**

Docket No. 217.

## III.
## Discussion

**A.     Purpose of FISA**

FISA was enacted in 1978 to end the executive branch's ability to conduct warrantless electronic surveillance in order to gather foreign intelligence information in the interests of national security.  *ACLU Foundation of Southern Cal. v Barr*, 952 F.2d 457, 460 (D. Columbia 1992).  Congress enacted FISA, creating a framework by which the executive branch may conduct legitimate electronic surveillance for foreign intelligence purposes, yet still protect citizens' right to privacy and their individual rights.  *Barr*, 952, F.2d at 461 (citing S. Rep. No. 604, pt. 1, 95th Cong., 1st Sess. 15 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 3904, 3916).  FISA's main purpose was the establishment of the United States Foreign Intelligence Surveillance Court (the "FISC"), a court composed of seven federal district judges designated by the Chief Justice.  50 U.S.C. § 1803(a).  The FISC reviews applications for FISA surveillance and searches.

With few exceptions, the Attorney General must approve all applications for FISA surveillance before an application seeking authority to conduct surveillance may be filed with the FISC.  50 U.S.C. §§ 1801(g), 1804(a).  An application to conduct surveillance must contain, among other things, the identity of the target of surveillance; a statement of facts showing that the target is a "foreign power" or agent thereof; and a certification that the purpose of the surveillance is to obtain "foreign intelligence information" that cannot reasonably be obtained by normal investigative techniques.  50 U.S.C. § 1804(a)(7).

"Foreign intelligence information" is defined as information relating to or that is

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 5**

necessary to the ability of the United States to protect against "actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power; sabotage or international terrorism by a foreign power or an agent of a foreign power; or clandestine intelligence activities by an intelligence service or network of a foreign power" or its agent. 50 U.S.C. § 1801(e)(1). Information may also relate to the "national defense or the security of the United States" or to the "conduct of the foreign affairs of the United States." 50 U.S.C. § 1801(e)(2). A foreign power is generally defined as a foreign government or any component or faction thereof, a group controlled by a foreign government, or a group engaged in international terrorism. 50 U.S.C. § 1801(a). Thus, the purpose of FISA is not necessarily to ferreting out and prosecute criminal activity, but rather to preempt hostile acts of terrorism or sabotage before they actually occur, or simply to gather information that may aid the United States in the conduct of its foreign affairs. *See* 50 U.S.C. § 1806(b) (requiring the advance authorization of the Attorney General before information may be used in a criminal proceeding or for law enforcement purposes); *In re Nat'l Sec. Agency Telecommunications Records Litigation*, 564 F.Supp.2d 1109, 1126 (N.D. Cal. 2008) ("Intelligence gathering related to national security is generally not for law enforcement . . .").

The FISC may not authorize surveillance unless it finds probable cause to believe that the target of the surveillance is a foreign power or its agent, and that foreign intelligence information is being sought. 50 U.S.C. § 1805(a)(3), (a)(5). In addition, the FISC must also find that the application contains procedures to minimize the acquisition and retention, and prohibit the discovery or dissemination, of information concerning unconsenting United States persons. 50 U.S.C. §§ 1805(a)(4), 1801(h). Any order approving surveillance may only be approved for up

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 6**

to ninety days, and then a new application requesting an extension must be filed. 50 U.S.C. § 1805(e)(1), (2).

If the government intends to enter into evidence or otherwise use or disclose information obtained from electronic surveillance authorized under FISA in "*any* trial, hearing, or other proceeding in or before any court" against an "aggrieved person," the Government must notify the aggrieved person that it intends to use such information. 50 U.S.C. § 1806(c) (emphasis added). Thus, the reference to "any" proceeding would include a civil proceeding such as this one. An "aggrieved person" is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k). Aggrieved persons have a cause of action against persons who committed a violation of the statute. 50 U.S.C. § 1810. *See also Al-Haramain Islamic Foundation v. Bush*, 451 F. Supp. 2d 1215, 1230 (D. Ore. 2006) (construing the FISA in a motion to compel surveillance materials allegedly protected from disclosure), *rev'd and remanded*, 507 F.3d 1190, (9th Cir. 2007) (remanding for consideration whether FISA preempted common law state secrets privilege).[1]

If an aggrieved person makes a request or files a motion pursuant to *any* statute or rule of the United States to discover materials relating to electronic surveillance, FISA's review procedure is triggered. 50 U.S.C. § 1806(f). Once such a motion is filed and the Attorney General has filed an affidavit under oath that disclosure or an adversary hearing would harm the

---

[1] Al-Kidd's complaint does not include a claim under 50 U.S.C. § 1810. However, FISA's applicability is not limited to cases brought under FISA because of the language in 50 U.S.C. § 1806(f), which triggers the review procedure upon the filing of "any" motion to discover FISA materials.

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 7**

national security of the United States, the District Court is required to

> review in camera and ex parte the application, order, and such
> other materials relating to the surveillance as may be necessary to
> determine whether the surveillance of the aggrieved person was
> lawfully authorized and conducted.  In making this determination,
> the court may disclose to the aggrieved person, under appropriate
> security procedures and protective orders, portions of the
> application, order, or other materials relating to the surveillance
> only where such disclosure is necessary to make an accurate
> determination of the legality of the surveillance.

18 U.S.C. § 1806(f).

If the Court determines that the surveillance was not lawfully authorized or conducted, it "shall . . . suppress the evidence which was unlawfully obtained or derived from electronic surveillance."  18 U.S.C. § 1806(g).  However, if upon review the Court determines the search was lawfully made, the Court is directed to deny the aggrieved person's motion except to the extent that "due process requires discovery or disclosure."[2]  These procedures have been upheld as satisfying an individual's constitutional rights if the person has been subjected to FISA surveillance.  *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an ex parte, in camera review of FISA materials does not deprive a defendant of due process."); *see also United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (holding that ex parte proceeding under FISA does not violate due process).

When examining the FISA applications under this rubric, the Court is directed to examine whether or not the FISA requirements for submission under § 1804 were met.  Once the appropriate certification is made under § 1804, FISA applications are subjected to only minimal

---

[2] All of the above described definitions, application procedures, and disclosure prohibitions are applicable when the application to the FISC is for a physical search.  *See* 50 U.S.C. §§ 1821 – 1829.

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 8**

scrutiny by the courts. *United States v. Badia*, 827 F.3d 1458, 1463 (11th Cir. 1987). The FISA judge is not to second-guess the executive branch official's certification that the objective of the surveillance is to gather foreign intelligence information, and a court reviewing the legality of the FISC's decision has no greater authority than did the FISA judge. *United States v. Duggan*, 743 F.2d 59, 77 (2nd Cir. 1984). When the target of the surveillance is not a citizen, as in al-Hussayen's case, the FISA judge is only required to find that probable cause exists to believe that the target of the requested surveillance is an agent of a foreign power and that the application is complete and in proper form. *Duggan*, 743 F.2d at 77. The probable cause standard is a "flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742 (1983), and under the circumstances, only required the FISA judge to believe that there was a fair probability of finding foreign intelligence information as a result of the surveillance or search. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (discussing probable cause in the context of a criminal search).

B.    Merits of Plaintiff's Motion to Compel

Neither party disputes that section 1806(f)'s procedures are applicable in this instance, or that al-Kidd qualifies as an aggrieved person under FISA. The United States Attorney General, along with two other high ranking FBI officials, filed affidavits indicating that disclosure of the FISA Documents would harm the national security of the United States, thus triggering the review procedure of § 1806(f). Turning now to the results of the Court's in camera review under FISA, it is clear that the applications and affidavits submitted to the FISC for its review complied with FISA's requirements.

For each application, a special agent of the FBI executed an affidavit serving as the basis

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 9**

for the application. An appropriate federal official from the Department of Justice completed and signed each application. The Attorney General of the United States approved each application, and all were properly certified by the Director of the FBI. Thus, each application went through proper channels and personnel as FISA requires.

Upon its careful review of the contents of each of the applications, the Court is satisfied that the descriptions and information contained therein demonstrated that an investigation of a foreign power was underway, and that Al-Hussayen was believed to be an agent of a foreign power. *See* 50 U.S.C. § 1801(a)(4), (b)(2)(C). Furthermore, the FISA Documents established that the primary objective of the surveillance and physical searches was simply to gather foreign intelligence information as defined by § 1801(e)(1). The FISA Documents indicated that appropriate minimization procedures were followed. The information's later use in Al-Hussayen's criminal trial, and Al-Hussayen's eventual acquittal of federal charges brought against him, does not serve to invalidate the FISA applications or the legality of the surveillance and searches conducted pursuant to the requests. *United States v. Badia*, 827 F.2d 1458, 1464 (11th Cir. 1987) (citing *Duggan*, 743 F.3d at 78). And finally, the Court finds that disclosure to al-Kidd of the applications, orders, and other materials relating to the surveillance and searches is not necessary to accurately determine the legality of the surveillance. *See* 50 U.S.C. § 1806(f).[3]

Having concluded that the surveillance was lawfully authorized under FISA, the Court is

---

[3] Such disclosure may be necessary if the Court's initial review indicated potential irregularities, such as vague identification of persons to be surveilled or possible misrepresentations of fact. *United States v. Duggan*, 743 F.2d 59, 78 (2nd Cir. 1984). The Court assures al-Kidd that it found no such irregularities.

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 10**

required to deny al-Kidd's motion "except to the extent that due process requires discovery or disclosure." 50 U.S.C. § 1806(g). Al-Kidd argues that in this case, due process requires disclosure because the information is relevant. But relevancy has its limits. First, the protections given information collected pursuant to FISA are unique, precisely because of the nature of the information gathered. Even if the information is relevant, "the normal rules regarding discovery must be harmonized with FISA and its procedures, notably § 1806(f)–which applies 'notwithstanding any other law' and which is designed to prevent disclosure of information relating to FISA surveillance in adversary proceedings." *Barr*, 952 F.2d at 469. Disclosure of FISA materials is the exception, not the rule. *United States v. Abu-Jihaad*, 531 F.Supp.2d 299, 310 (D. Conn. 2008).

Second, although Fed. R. Civ. P. 26(b)(1) allows discovery of information "reasonably calculated to lead to the discovery of admissible evidence," the information must also be relevant and "nonprivileged." Even if the Court were to find the FISA Documents relevant, the Federal Defendants have, with their submissions, sufficiently documented their claims of privilege. The Federal Defendants submitted the affidavit of Attorney General Michael Mukasey, (Docket No. 217-1), as well as affidavits *in camera* of two high ranking FBI officials with knowledge of the FISA Documents and their contents. All three affidavits adequately explain the basis for withholding the FISA Documents pursuant to claims of privilege.

Specifically, the affidavits establish that the national security of the United States would be at risk if disclosure were permitted, because it would reveal the methods, sources, identities, and tactics used for gathering intelligence information. The Court has carefully reviewed the explanations provided in the affidavits, as well as the FISA Documents themselves. The

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 11**

information in the FISA Documents supports the claims made in the affidavits concerning the harm to national security should the information be disclosed. Even absent such explanations, and based simply upon the information in the FISA Documents, the Court understands the need for nondisclosure. The information contained therein is highly sensitive and extremely detailed concerning the sources and methods that the United States used to gather foreign intelligence information. The Court is therefore satisfied that the basis for asserting the various privileges in this case is extremely well documented and necessary. Accordingly, the Court concludes that the government's assertion of privilege outweighs Plaintiff's need for this material, and that the Federal Defendants have sustained their burden as to the various law enforcement privileges asserted preventing disclosure.

The Court's decision is in line with the principles of relevancy and executive privilege discussed in *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1205 (9th Cir. 2007). In that case, the Court of Appeals was faced with a situation in which a sealed document gathered pursuant to FISA was inadvertently released to the plaintiff. The document caused the plaintiff to be aware it was subject to surveillance under FISA, and therefore it sued under FISA for damages, contending that it qualified as an "aggrieved person." But, without access to either the document or testimony about its contents, the plaintiff would not be able to proceed because it lacked the ability to prove it had standing. Without the document, the plaintiff did not otherwise know it was subject to surveillance, and therefore could not qualify as an aggrieved person. Defendants argued that the document was inadvertently produced, and was subject to a claim of privilege.

The appeals court affirmed the district court's decision that the document was properly

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 12**

sealed, and despite its relevance to the plaintiff's case, concluded that no testimony about the document could be admitted. *Bush*, 507 F.3d at 1205. Absent the document or testimony concerning the information it held, the plaintiff's claims were dismissed. *Bush*, 507 F.3d at 1205.[4] Thus, the court concluded that "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Id.* (quoting *United States v. Reynolds*, 345 U.S. 1, 11 (1953)).

Al-Kidd also argues that he could receive the information subject to a protective order. However, whether or not a protective order could be put into place is irrelevant for purposes of FISA. For example, in *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987), despite plaintiff's counsel's security clearances and therefore their ability to review sensitive information, the court denied the plaintiff access to materials gathered pursuant to FISA. The court explained that "Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy security clearance." *Ott*, 827 F.2d at 477. *See also United States v. Bin Laden*, 126 F.Supp.2d 264, 287 n.27 (S.D.N.Y. 2000) (finding defense counsel's argument

---

[4] The Ninth Circuit did issue a remand order in this case, directing the district court to determine whether the FISA preempts the state secrets privilege and for further proceedings collateral to that determination. *Bush*, 507 F.3d at 1206. The district court eventually held that, with respect to proceedings under 50 U.S.C. § 1810, FISA does preempt the protocol for asserting the state secrets privilege described in *Reynolds*. *In re Nat'l Sec. Agency Telecommunications Records Litigation*, 564 F.Supp.2d 1109, 1119 (N.D. Cal. 2008). However, the ruling in that case is not applicable to these proceedings, and the district court upon remand ultimately dismissed the plaintiff's case under § 1810 of the FISA with leave to amend to assert any non-FISA claims the plaintiff may have had. *In re Nat'l Sec. Agency*, 564 F.Supp.2d at 1137.

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 13**

that their security clearances permitted them access to FISA documents unpersuasive). *Ott* therefore compels the conclusion that, even with a protective order and appropriate security clearances, this Court may still deny al-Kidd access to the information. Accordingly, al-Kidd's argument that he could receive the information subject to a protective order is unpersuasive under the circumstances in this case.

Even if al-Kidd could overcome the assertion of privilege, he has not adequately articulated how the FISA Documents might be relevant to his claims regarding the falsity of information presented in the warrant and his claim that his detention as a material witness was in lieu of a criminal arrest warrant. While the Court appreciates that al-Kidd does not have access to the information being sought, he should be able to articulate why the information in the FISA applications and the information collected pursuant to the FISA surveillance would be relevant to his claims, as is the case with any other motion to compel. Yet, beyond the bare assertion that the documents are relevant, al-Kidd has not come forward with a compelling argument that explains why the information relates to his claims. The Court notes, too, that the FISA Documents relate not to al-Kidd, but to Al-Hussayen and the investigation surrounding Al-Hussayen's possession or knowledge of foreign intelligence information. Thus, the Court can only speculate that the relationship between the information al-Kidd seeks and his actual claims is tenuous, at best.

Finally, the Court is struck by the fact that al-Kidd already possesses the "fruits" of the surveillance in the form of surveillance directly relevant to him that was intercepted pursuant to surveillance of Al-Hussayen. Presumably, al-Kidd has received all the information he would otherwise be entitled to under Fed. R. Civ. P. 26(b)(1), since discovery of the FISA Documents

**SUPPLEMENTAL MEMORANDUM DECISION AND ORDER - 14**

would ultimately have led to discovery of the documents that the Federal Defendants have produced to him.  In other words, al-Kidd has already received the end results of discovery "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  All other documents remain subject to the Federal Defendants' claim of privilege for the sake of preserving state secrets.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Motion to Compel (Docket No. 176) be **DENIED** as it relates to the FISA Documents.  This completes all proceedings related to Plaintiff's Motion to Compel.  The parties are advised to comply with the requirements of the Court's January 24, 2008 Order (Docket No. 226)  requiring submission of a proposed schedule for filing pre-trial motions, oppositions and reply briefs within seven (7) days of final resolution of all discovery-related disputes.



DATED: December 4, 2008

Honorable Mikel H. Williams
Chief United States Magistrate Judge